## City of Chicago v. Joseph J. Duffy.

### Gen. No. 10,738.

1. EXTRA WORK—*by whom expense of, done by contractor, should be borne.* Expense of extra work done by a contractor occasioned by the errors of the inspectors of the owner, should be borne by such owner.

2. COMMISSIONER OF PUBLIC WORKS—*when, cannot bind city.* The commissioner of public works of the city of Chicago has no authority to change or alter a contract entered into between such city and a contractor.

3. CITY ENGINEER—*effect given to certificates of.* Certificates for payment issued by the city engineer in the performance of his duty are presumed, in the absence of evidence to the contrary, to include only material properly used in the performance of the contract under which the certificate is issued.

4. JUDICIAL NOTICE—*of what taken.* Judicial notice will be taken by the court of such things as are or should be well known in its jurisdiction.

5. JUDICIAL NOTICE—*of what taken.* Judicial notice will be taken of such soil conditions existing within the limits of its territorial jurisdiction as are matters of common knowledge.

6. CONTRACT—*when attempted modification of, unauthorized.* The mayor and other officers of the city of Chicago have no authority to enter into a supplemental contract substantially modifying a previous one let (as it was required by statute to be) to the lowest responsible bidder.

7. MEASURE OF DAMAGES—*for failure to pay money when due.* In-

terest, ordinarily, is the proper and sole measure of damages in such case.

8. DAMAGES—*demand for, entire.* A demand or claim for damages is, ordinarily, an entirety, and cannot be split up and sought to be recovered for, part in one action and part in another. One recovery bars all subsequent claims upon account thereof.

9. DELAY IN PERFORMANCE—*failure to pay as provided by contract excuses.* Delay in performance by a contractor is excused by the failure of the owner to pay promptly as required by contract.

10. CHANCERY SUIT—*when pendency of, as bar to action at law, cannot be availed of.* Where the defendant to an action at law has pleaded to the merits and only seeks to raise the question of the pendency of a chancery suit as a bar to such action by introducing a transcript thereof, and moving to dismiss, the right so to raise such question is deemed to have been waived.

11. JUDGMENT—*when, should not provide for payment out of particular fund.* Where an action *in personam* is brought against a municipality, the form of judgment should not provide for payment of such judgment out of a particular fund.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1902. Reversed, judgment here with finding of facts. Opinion filed November 29, 1904.

THOMAS J. SUTHERLAND, for appellant; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

SEARS, MEAGHER & WHITNEY and WINSTON, STRAWN & SHAW, for appellee; NATHANIEL C. SEARS, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

The appellee, Joseph J. Duffy, brought against the appellant, the City of Chicago, an action in assumpsit, and upon the trial by the court recovered a judgment for $301,376.08. The action was brought upon a contract between the parties whereby the plaintiff agreed to construct for the defendant section 2 of a certain water tunnel. A contract between the defendant and Frederick C. Weir and others for the construction of section 3 of the same tunnel is set out in City of Chicago v. McKechney et al., 205 Ill. 372, and as the general provisions of the two contracts and of the specifications therein mentioned are identical, for such provisions reference will be had to the report of

that case.   The special provisions of this contract are that the plaintiff shall "build and construct a water tunnel and shaft from a shaft to be located at the west end of the proposed ten-foot water tunnel situated in the neighborhood of North Green street near Grand avenue, thence to a terminus at some point west of Rockwell street to be determined upon by the Commissioner of Public Works, said tunnel and shaft to be built and constructed according to the terms, conditions and directions set forth in the contract and specifications thereto attached and made a part of this contract, said tunnel being designated in the specifications as second section 8 feet internal diameter." The provisions of the contract as to the compensation to be paid for such work are as follows:

"Shaft 10 feet internal diameter, $30.00 per lineal foot; Tunnel in earth 8 feet internal diameter, $13.55 per lineal foot; Tunnel in rock 8 feet internal diameter, $17.75 per lineal foot; Rock excavation over and above cost of lineal foot of tunnel or shaft, $10.00 per cubic yard; Cast iron in covers, etc., 6c per pound." Counsel for appellee state in their brief, and we take their statement as correct, that the amount of plaintiff's recovery is made up by the following items:

| | |
|---|---|
| Allowance for back masonry | $105,165 00 |
| Do      for conglomerate | 54,000 00 |
| Damages for delay | 13,367 50 |
| Retained percentage of 15% | 122,715 34 |
| Work done after last estimate | 6,128 24 |
| | $301,376 08 |

The contention of appellant is that the trial court erred in allowing to plaintiff each item that went to make up the amount of his recovery, and further erred in refusing to allow defendant credits as over-payments for certain sums of money which had been paid to the plaintiff during the progress of the work.

We will, so far as possible, consider together the respective contentions of the parties which relate to the same subject-matter.

1. BACK MASONRY IN TUNNEL IN ROCK. Before July, 1897, plaintiff excavated 4,707 lineal feet of tunnel in rock. A controversy arose between the parties as to his compensation for the rock thus taken out, and he brought a suit against the city which went to the Supreme Court—Chicago v. Duffy, 179 Ill. 447. In that case it was held that under the contract he was entitled to compensation for the rock necessarily taken out in excavating the tunnel in rock at the rate of ten dollars per cubic yard. A judgment in his favor for the rock taken out up to that time for $204,328.52 was affirmed. He was entitled under the contract to be paid but eighty-five per cent, the remaining fifteen per cent being retained until the completion of the work. $204,328.52 is eighty-five per cent of $240,386.50, so that his recovery implied a finding that he had taken out 24,038.65 cubic yards of rock in excavating the 4,707 feet of tunnel in rock. Work on the tunnel was suspended from July, 1897, to April, 1899, when it was resumed and the tunnel completed in April, 1900. Plaintiff was paid the contract price of $17.75 per lineal foot for 9,958.05 lineal feet of tunnel in rock. Of this amount 4,707 feet was excavated before July, 1897, and 5,251 after April, 1899.

The trial court allowed plaintiff as a part of his recovery $105,165 for 10,516.5 cubic yards of back masonry in the 5,251 feet of tunnel in rock excavated after April, 1899, and appellant contends that the court erred in making such allowance.

The specifications provide that "in every instance all spaces left between the outside of the regular brickwork and the excavation shall be filled with solid brick masonry but no allowance shall be made for such additional work or material." The masonry placed between the outside of the brickwork and the excavation is what in this case is called back masonry.

In City of Chicago v. Weir, 165 Ill. 582, it appeared that the contractors had claimed and the city had paid them $5,930.35 for back masonry and it was held that they were

not entitled to anything for back masonry under the plain provisions of the specifications and that the money so paid the plaintiffs "amounted to nothing more than an overpayment which might properly be deducted from whatever sum was due the plaintiffs for any portions of the work."

It is not now contended that the plaintiff is, according to the terms of the contract, entitled to be paid anything for back masonry, but the contention of appellee is that the inspectors employed by the city who were in the immediate charge and control of the work done after April, 1899, were incompetent; that through and by reason of the erroneous and improper orders and directions given by them to the employees of the plaintiff the tunnel was not excavated upon the line given by the city engineer but was excavated first upon one side and then upon the other of that line through the greater part of its length; that after the tunnel was so excavated the city engineer ordered the plaintiff to straighten it; that he did straighten it and in doing so was compelled to take out and did take out 10,516.5 cubic yards of rock, which at $10 per yard amounted to $105,165.

The contract provided that "all of the material used in said work, manner, time and place of doing said work, together with all things therewith connected must be in each and every particular satisfactory to the Commissioner of Public Works. * * * That all of the work shall be executed in the best and most workmanlike manner."

The contract further provided that if the contractor should fail to proceed with the work in accordance with the requirements and conditions of the agreement that the city by its Commissioner of Public Works should have full right and authority to take the work out of his hands and complete the same, and further that the contractor should perform all of said work under the immediate direction and superintendence of the Commissioner of Public Works of the City of Chicago. The inspectors employed by the city gave to the employees of the plaintiff the lines and grades of the tunnel and drew circles on the face of the rock within

which such employees were directed to drill the holes for blasting.

Appellee contends that the 5,251 feet of tunnel was excavated upon the lines and grades given by the inspectors placed in the tunnel by the Commissioner of Public Works for that purpose; that the drilling was done in the manner directed by the inspectors; that after the tunnel was first excavated whatever further rock excavation was necessary to straighten it was made necessary through the fault of the inspectors in giving to plaintiff's employees wrong lines and grades, and not through the failure of such employees to follow the orders and directions of the defendant's inspectors and engineers; that as the space to be filled with back masonry in the tunnel as finally excavated, was increased over that required in the tunnel as first excavated, by the amount of rock which was taken out in straightening the tunnel, the cost and expense of putting in such additional back masonry should be borne by the defendant.

If through and by reason of the errors of the inspectors of defendant the plaintiff was required to do additional and unnecessary work we think the cost and expense of such additional and unnecessary work should fall upon the defendant and not upon the plaintiff, and this conclusion seems to be in accordance with the decisions.  C. & G. E. R. R. Co. v. Vosburgh, 45 Ill. 311; Sexton v. City, 107 Ill. 323; Guerin v. Rodwell, 8 Vroom (N. J.) 71; Mulholland v. Mayor of New York, 113 N. Y. 631; Wyandotte v. King Bridge Co., 100 Fed. Rep. 203.

There was much conflict in the testimony.  The witnesses for the plaintiff testified that the directions of the inspectors were carefully observed and followed, that the drilling was done at the places and in the manner directed by the inspectors and the tunnel in all respects excavated in strict accordance with the orders and directions of the inspectors.  The witnesses for the defendant testified that the employees of the plaintiff refused to obey the orders of the inspectors, either as to the places where such holes should be made or the direction in which the same should

be drilled. In short, the testimony of the witnesses for the plaintiff alone, would warrant the conclusion that the tunnel was excavated in the manner in which it was first excavated through the fault of the city's inspectors, and the testimony of the witnesses for the defendant would warrant the inference that it was so excavated because of the failure of the employees of the plaintiff to follow the directions of the inspectors. The question of the credibility of witnesses is peculiarly within the province of the jury or of the judge who sees the witnesses upon the stand. There are some facts and circumstances that tend to corroborate the contention of the plaintiff. First, the volume of the 5,251 feet of tunnel as first excavated was much less than the volume of the tunnel excavated before 1897. The volume of that tunnel as found by the jury and court as has been stated was 24,038.65 cubic yards in 4,707 lineal feet or 5.1 cubic yards per lineal foot. The volume of the 5,251 feet as first excavated was 20,554.27 cubic yards, or 3.91 cubic yards per lineal foot. When the 4,707 feet was excavated, the right of plaintiff to any additional compensation for the rock taken out over the lineal foot price was in dispute. Before the last 5,251 feet was excavated it had been decided that he was entitled to be paid $10 per yard for the rock taken out. Appellant contends that the plaintiff purposely made the tunnel larger than was necessary because he was to receive $10 per yard for the rock taken out. If this were so, we should expect to find the tunnel excavated after the decision of the Supreme Court, as large or larger than that excavated before that decision. But we find that the volume of that part of the tunnel excavated after that decision, as first excavated, was 1.19 cubic yards per lineal foot less than that of the part excavated before such decision.

Again, the provisions of the contract gave the Commissioner of Public Works absolute control of the work and the manner in which it should be performed. If the employees of the plaintiff refused to obey the orders of the inspectors and because of such violation were excavating a

tunnel of an improper size or not on the proper line or grade, it was the duty of such inspectors to report such conduct to the Commissioner of Public Works. The engineer of the defendant in charge of the work certainly knew during the progress of the work whether the tunnel was being excavated crooked or straight, or of a proper or improper size. If it was being made crooked or too large it was his duty to report the fact to the Commissioner of Public Works. That no report that the tunnel was being improperly excavated through the fault of the employees of the plaintiff was made to the Commissioner of Public Works may, we think, be inferred from the fact that the Commissioner of Public Works approved the estimates of the city engineer for every yard of stone that was taken out of the tunnel in question and the defendant paid the plaintiff upon such estimates $10 per yard for such stone, less the retained percentage. Upon a careful consideration of the evidence we cannot say that the finding of the Circuit Court, implied from the recovery, that the 5,251 feet of tunnel in question was first excavated in substantial compliance with the orders and directions of the inspectors of the defendant, is so manifestly against the weight of the evidence as to require a reversal of the judgment. From such finding it follows, we think, that the back masonry plaintiff was obliged to put in by reason of the straightening of the tunnel cannot be regarded as work that was necessary under the contract, but must be regarded as work that was required and made necessary through the improper orders and directions given by the inspectors of the defendant to the employees of the plaintiff. We are, however, of the opinion that the Circuit Court erred in its finding, also inferred from the recovery, that the amount of back masonry put in by the plaintiff because of the errors of the inspectors of the defendant was 10,516.5 cubic yards. This finding was no doubt based upon the testimony of the engineer of the plaintiff that the amount of back masonry required in the 5,251 feet of tunnel as it was first excavated was 3,940.2 cubic yards and after the tunnel had been

straightened was 14,456.7 cubic yards, for the difference between the two amounts is 10,516.5 cubic yards, the precise number of yards for which the recovery was had. The finding is inconsistent with the testimony of the plaintiff and documents signed by him.  No part of 'the tunnel in rock was bricked up until after the whole of the tunnel in rock, the 5,251 feet as well as the 4,707 feet, had been excavated.  The estimates for the lineal foot price of $17.75 per foot for the tunnel in rock were only issued as the tunnel in rock was bricked up, not as it was excavated. November 1, 1899, the defendant issued to the plaintiff Estimate No. 41, as follows:

"Estimate No. 41.

Date of Contract, Sept. 30, 1895.

OFFICE OF THE  
DEPARTMENT OF PUBLIC WORKS.  
CHICAGO, NOV. 1, 1899.

I hereby certify that Joseph J. Duffy is entitled to six thousand seven hundred eighteen and 40-100 dollars on his contract for Section No. 2, New Land Tunnel, as follows, viz.:

| For | 522.05 lin. ft. 10-ft. shaft....at 30.00 | $ 15,661 50 |
|---|---|---|
| " | 9,903.3 " " 8 " tunnel.. " 13.55 | 134,189 71 |
| " | 2,942.48 cu. yds. masonry in tunnel ........... " 10.00 | 29,424 80 |
| " | 3,054.43 cu. yds. rock excav. in earth tunnel...... " 10.00 | 30,544 30 |
| " | 625.65 cu. yds. rock excav. in shafts ......... " 10.00 | 6,256 50 |
| " | 909,264 ft. B. M. timber in tunnel ........... " 10.00 | 9,092 64 |
| " | 8,916.5 lbs. wrought iron.... " .06 | 534 99 |
| " | 44,592.92 cu. yds. rock excav. in rock tunnel....... " 10.00 | 445,929 20 |
| " | work done since last estimate: | |
| " | 790.4 cu. yds. rock excavation in rock tunnel, at 10.00....$7,904 00 | |
| | Less 15 % .................. 1,185 60 | |
| | Balance ...............$6,718 40 | |

I hereby certify that the work for which this voucher is issued has been done according to specifica-

tions. The quantities are correct
and the prices according to contract
or agreement.
                    C. L. CRABBS.
                         Ass't Engineer.
Total work done...................... $671,633 64
Less amount reserved as per agreement.....    84,369 42

Balance .............................. $587,264 22
Less amount paid on former estimates .....    580,545 82

Amount due to date.................. $   6,718 40
C. L. CRABBS, Ass't Engineer.
JOHN ERICSON, City Engineer.
    Approved, L. E. McGANN, Commissioner.

    Endorsed on back as follows:

Original Voucher No. 37,680.                     1899.
         Joseph J. Duffy.
Water fund, 54.  J. 3 .......................$6,718 40
    City Comptroller's Office.    Paid Nov. 7, 1899.
                          Chicago, Illinois.
Approved for payment.  WM. D. KERFOOT,
                             Comptroller.   J. F.
    Received from the City of Chicago, payment in full of
the within claim.
                             Jos. J. DUFFY."

And the plaintiff signed the receipt therein contained for
$6,718.40 as the amount due him on the contract to date.
From this estimate it appears that while plaintiff had been
paid for 9,903.3 feet of tunnel in earth at $13.55 per foot
he had received no estimate for the lineal foot price of
tunnel in rock.   December 1, 1899, plaintiff received and
receipted his next estimate No. 42, as follows:

" Estimate No. 42.
Date of Contract, Sept. 30, 1895.
                         OFFICE OF THE            ⎫
                    DEPARTMENT OF PUBLIC WORKS,   ⎬
                         CHICAGO, Dec. 1, 1899.   ⎭
    I hereby certify that Joseph J. Duffy is entitled to sev-
enteen thousand four hundred six and 26-100 dollars on
his contract for Section No. 2, New Land Tunnel, as fol-
lows, viz:

City of Chicago v. Duffy.

| | | | |
|---|---|---|---|
| For | 522.05 lin. ft. 10-ft. shaft....at 30.00 | $ 15,661 | 50 |
| " | 9,903.3 " " 8 " tunnel.. " 13.55 | 134,189 | 71 |
| " | 745.0 " " 8 " " .. " 17.75 | 13,223 | 75 |
| " | 2,942.48 cu. yds. masonry in tunnel .......... " 10.00 | 29,424 | 80 |
| " | 3,054.43 cu. yds. rock excav. in earth ........... " 10.00 | 30,544 | 30 |
| " | 45,318.34 cu. yds. rock excav. in rock ........... " 10.00 | 453,183 | 40 |
| " | 625.65 cu. yds. rock excav. in shafts .......... " 10.00 | 6,256 | 50 |
| " | 909,264 ft. B. M. lumber in tunnel........... " 10.00 | 9,092 | 64 |
| " | 8,916.5 lbs. wrought iron.... " 0.06 | 534 | 99 |
| " | work done since last estimate : | | |
| " | 745.0 lin. ft. tunnel..at 17.75   13,223 75 | | |
| " | 725.42 cu. yds. rock excav........... " 10.00   7,254 20 | | |

Less
15 %  ⎰ I hereby certify that the ⎱   20,477 95
      ⎱ foregoing prices are ac- ⎰    3,071 69
        cording to contract or    ————
        written agreement.         17,406 26

I hereby certify that the work for
which this voucher is issued has been
done according to specifications.
The quantities are correct and the
prices according to contract or
agreement.

C. L. CRABBS,
Ass't Engineer.

| | | |
|---|---|---|
| Total work done..................... | $692,111 | 59 |
| Less amount reserved as per contract agreement................................ | 87,441 | 11 |
| Balance ........................... | 604,670 | 48 |
| Less amount paid on former estimates...... | 587,264 | 22 |
| Amount due to date................. | $ 17,406 | 26 |

C. L. CRABBS, Ass't Engineer.  ⎱ Approved,
                                ⎰   L. E. McGANN,
JOHN ERICSON, City Engineer.    ⎰   Commissioner.

Endorsed on back as follows :

Original Voucher, 1899.  No. 40,286.  Joseph J. Duffy.
Water fund, J 3 .............................$17,406 26
City Comptroller's Office.   Paid, Dec. 8, 1899.
                    Chicago, Illinois.
Approved for payment, W. D. KERFOOT.   J. H.
    Received from the City of Chicago, payment in full of
the within claim.                    Jos. J. DUFFY.
    Audited, F. H. TAYLOR.
            Received Dec. 5, 1899.   Comptroller's Office."

This contains an estimate for 745 lineal feet of
    tunnel in rock at 17.75..................... 13,223 75
725.42 yards rock excavated at $10..........  7,254 20
                                              ─────────
                                             20,477 95
The amount of rock excavated in tunnel, in rock,
    up to November 1, 1899, as stated in Estimate
    41 is, cubic yards......................... 44,592.92
Add to this sum the number of yards of rock ex-
    cavated in tunnel, in rock, after the last esti-
    mate as stated in Estimate 42..............    725.42
                                              ─────────
and we have.................................45,318.34

And this is the amount of rock excavated in tunnel, in rock,
up to December 1, 1899, as stated in Estimate 42.

The 4,707 feet of tunnel in rock was not trimmed or
straightened, but was bricked up as originally excavated.
The tunnel was excavated through its entire length as
early as November 1, 1899.  Plaintiff was shown Estimate 42
when on the witness stand and testified that the 725.42 cubic
yards therein stated to have been excavated since the last
estimate, Estimate 41, and the rock thereafter excavated as
stated in the estimates issued after Estimate 42, was exca-
vated in trimming or straightening the 5,251 feet of tunnel.
From the testimony of the plaintiff and the estimates re-
ceipted by him it conclusively appears that the 44,599.22
cubic yards of rock, excavated in tunnel in rock, was taken
out in the original excavation of the 9,958.05 feet of tun-
nel in rock and that the rock excavated after Estimate 41
was issued, was excavated in straightening said 5,251 feet of
tunnel.   The total amount of rock excavated in tunnel in

rock was 52,964 cubic yards.   The amount excavated up to November 1, 1899, as stated in Estimate 41, was 44,592.92 cubic yards.   Taking this sum from 52,964 we have 8,371.08 cubic yards as the amount of rock which was excavated in trimming and straightening the 5,251 feet of tunnel.   This quantity at $10 per cubic yard amounts to $83,710.80, and this sum must, from the evidence, be held the limit of the recovery plaintiff was entitled to, for back masonry made necessary by the errors of the inspectors or other employees of the defendant.   Plaintiff recovered for 10,516.50 cubic yards of back masonry when he was at most entitled to recover for 8,371.08 cubic yards.   The difference between the two amounts is 2,145.42 cubic yards which at $10 per yard amounts to $21,454.20.   Our conclusion, from the evidence, is that the recovery of the plaintiff for back masonry was erroneous and excessive to the amount of $21,454.20.

2.   BACK MASONRY IN TUNNEL IN EARTH.   The plaintiff was allowed and paid, less the retained percentage, $29,424.80 for 29,424.80 cubic yards of back masonry in the earth section of the tunnel.   Appellant contends that such allowance was unauthorized and improper and should be held an over-payment and defendant given credit therefor.   The grounds upon which such allowance was made by the commissioner of public works are stated by him in the following letter :

" CHICAGO, September 19, 1896.
MR. JOSEPH J. DUFFY, Section 2, New Land Tunnel:
DEAR SIR:   Regarding allowance for back masonry, there will be no allowance for extra masonry placed outside the regular specified rings of the tunnel except where, on account of sand pockets or other loose material, large caves occur, necessitating the placing of crown bars or planks to properly protect the work; and in these cases only such material as is directed to be placed in the roof between the regular rings of the tunnel and the crown bars or planks will be allowed.   The price for brick work so placed will be $10 per cubic yard; for other back masonry

you will be allowed to substitute sand, well packed, for back filling.

Yours truly,

JOSEPH DOWNEY,
Commissioner."

The specifications under the head of *Construction* provide that "the contractor must take the work entirely at his own risk. No extra allowance will be made for quicksand, hard-pan or boulders. * * * All lumber, timber or other material used for bracing and supporting the sides or roof of the tunnel previous to the completion of the masonry shall be furnished and put in place by the contractor. If the condition of the soil is such that in the judgment of the city engineer it becomes necessary to leave permanently any lumber or boards used in supporting the soil in the excavation, the contractor will be paid for such lumber at the rate of $10 per thousand feet b. m. The amount of lumber left in the work shall be reduced to what is absolutely necessary." The provision that "No extra allowance will be made for quicksand, hard-pan or boulders," is repeated in the specifications under the head of *Masonry*, and it is under that head that the provision relating to back masonry, above set forth, is found. The specifications further provide that "If from the character and condition of the ground through which the tunnel is to be constructed any unavoidable emergency shall arise from quicksand pockets, then the Commissioner of Public Works shall have the authority to extend the time of the completion of the contract," etc. With the provision that "No extra allowance will be made for quicksand, hard-pan or boulders" in the specifications under the head of *Construction*, and again under the head of *Masonry*—with a provision that in case the condition of the soil made it necessary to leave timbers in the excavations to support the soil, the same shall be paid for, and that in case an unavoidable emergency shall arise from quicksand pockets the time for the completion of the tunnel may be extended—it must be held that the contract which the parties made fixes their respective rights and liabilities in the case of excavating through quicksand

or loose material. The Commissioner of Public Works had no authority to change or alter the contract of the parties. In Weir v. Chicago, *supra*, the city authorities had paid the contractors for back masonry, and the Supreme Court held that the contractors were not entitled to anything for such masonry, and must credit the amount so paid as a payment on whatever they were entitled under the contract to be paid for, and certainly to the fact of payment in that case must be given quite as much force and effect as can be given to the letter of the Commissioner of Public Works in this case. It follows from what has been said that the allowance of $29,424.80 for back masonry was in our opinion unauthorized and improper. The defendant was entitled to have eighty-five per cent of that sum, the amount that had been paid to the plaintiff, treated as an overpayment and credited upon whatever sum was due the plaintiff for any portion of the work, and the remaining fifteen per cent deducted from the retained percentage, and the Circuit Court erred in refusing to allow such credit and make such deduction.

3. LUMBER. There was allowed and paid the plaintiff, less the retained percentage, $9,084.67 for 908,647 feet, board measure, of lumber left permanently in the tunnel at $10 per M. Appellant admits that some part of said lumber was properly placed in the tunnel and properly left there. For such lumber plaintiff was entitled to be paid $10 per thousand feet under the contract, but appellant contends that a part of the 908,647 feet of lumber ought not to have been placed in the tunnel in the first instance, and that as it cannot be ascertained from the evidence for what part of said lumber the plaintiff was entitled to be paid, the entire allowance must be regarded as improper. This contention cannot be sustained. It was for the city engineer to determine what timbers or boards should be left in the tunnel. It was his duty to include in his certificates for payment only that part of the lumber placed in the tunnel which it was absolutely necessary to leave there, and the presumption, in the absence of evidence to the con-

trary, is that he only included in such certificates lumber which was properly left in the tunnel.

4. BOULDERS. During the progress of the work plaintiff was allowed and paid, less the retained percentage, $30,544.30 for 3,054.43 cubic yards of "rock excavated partly in earth, "at $10 per yard. He was also, as we have seen, allowed $529,640 for 52,964 "cubic yards of rock excavated in rock." As to the nature of the "rock excavated partly in earth," plaintiff was the only witness, and testified as follows:

" Q. Now, you were paid by the city the sum of $30,-544.30, as contained in this last estimate for 3,054.43 cubic yards of rock in earth; will you state what this was? A. Boulders over half a cubic yard in size.

Q. Did any of this so-called rock excavation include boulders of a less size than one-half cubic yard in size? A. Not that I know of. * * * I was paid for rock excavation or for boulders on the second estimate. I received for boulders as shown in that estimate. It is called cubic yards of rock excavation partly in earth.

Q. And where that term occurs in those estimates, ' partly in earth,' that means the excavation of boulders in the earth section of the tunnel? A. Yes, sir. I received pay for boulders up to February 1, 1897. The sum total up to that time was for rock excavation, partly in earth, at ten dollars—$30,544.30.

Q. And you say in that amount you got, you was allowed measurements at ten dollars per cubic yard on all boulders exceeding half a yard—half a cubic yard in size? A. Yes."

It appears from this testimony that this allowance of $30,544.30 to plaintiff was for boulders found in the excavation in earth.

The statute required the work to be let to the lowest bidder. The specifications upon which the bids were made and which are expressly made a part of the contract sued on, state that " The contractor must take all work at his own risk. * * * No allowance will be made for quicksand, hard-pan or boulders. Where the tunnel is partly in earth and partly in rock the contractor will be paid an additional price per cubic yard for rock excavation over and

above the unit price per lineal foot of tunnel in earth."
The plaintiff in his bid proposed to construct the tunnel in
question " according to the specifications " at the following
prices   *   *   *.  " Tunnel in earth eight feet internal diam-
eter per lineal foot.............................$13.35
Tunnel in rock   *   *   *   .........·...............  17.75
Rock excavation over and above cost of lineal foot
    of tunnel or shaft per cubic yard..............  10.00 "

" Courts will take judicial notice of such things as are or
should be well known in their respective jurisdictions."
17 Am. & En. Ency. of Law, 895.

For many years before the contract was made it was
generally known in this community that beneath the sur-
face soil and deposits of no great thickness, there was
everywhere in Chicago, except where the rock came to the
surface, a formation known as boulder drift or boulder
clay which was immediately above and rested upon a floor
of limestone.   This limestone comes to the surface in sev-
eral places in the city and at such places limestone quarries
had been worked for years before the contract was made.
In an article on the geology of Chicago in Andreas' History
of Chicago published in 1884, Vol. 1, p. 590, it is said:  " All
the fresh-water deposits lie on a slope of boulder drift-clay
except where protuberances of rock come above the sur-
face.   *   *   *   This clay varies from zero to at least
seventy feet in thickness and is a hard, stony clay, contain-
ing ice-scratched boulders of rock transported from hyper-
borean regions and lies everywhere upon a bed of Niagara
limestone.   *   *   *   This clay has been thoroughly stud-
ied, because during the excavation of about ten miles of
tunnels for the Chicago Water Works the working of them
was watched by the members of the Academy of Sciences.
*   *   *   This clay is also replete with pockets full of
stratified gravel having the general shape of boulders and
surrounded by compact clay."   There is no doubt as to the
meaning of the words rock and boulders as used in the
contract and specifications.   Their meaning is made certain
by the connection in which they are there used.   " Rock

in ordinary language is the stony matter which constitutes the earth's crust as distinguished from clay, gravel, sand, peat, etc." Encyc. Dict. "Rock."

"Boulder is used to signify a large rounded block of stone which, whether lying loose on the surface of the ground or imbedded in the soil, is of different composition from the rocks adjacent to which it now rests and must therefore have been transported from a lesser or greater distance." Id. "Boulder." A boulder is: "1. A large stone worn smooth or rounded by the action of water; a large pebble. 2. *Geol.* A mass of rock, whether rounded or not, that has been transported by natural agency from its native bed." Webster's Dic. "Bowlder."

The word rock in the contract and specifications signifies and means the limestone found in its native bed in excavating the tunnel. The word boulder as therein used means the stones found imbedded in the boulder clay or drift which were too large to be called pebbles.

No doubt the excavation of a tunnel in rock is more difficult and expensive than in earth, nor that quicksand, hard-pan or boulders increase the cost of excavating a tunnel. It was therefore proper that bidders should be informed by the specifications either that an extra allowance would or would not be made for rock, quicksand, hard-pan or boulders. The specifications state that for rock excavation an additional price per cubic yard over the lineal foot price will be paid and that no allowance will be made for quicksand, hard-pan or boulders.

A contract made pursuant to the statute is binding upon the parties to it, is binding upon the contractor and upon the officers of the city. The city officers under this contract had no more authority to allow the plaintiff $30,-544.30 for 3,054.43 cubic yards of boulders, or any sum for any number of cubic yards of boulders taken out in excavating the tunnel in earth, than they had to allow him more than the contract price for the tunnel in earth, the tunnel in rock, or the rock excavation. They had no more right or authority to call boulders rock, within the mean-

ing of those terms as used in the contract, and allow plaintiff $10 per cubic yard for the boulders taken out in the tunnel in earth under the name of "rock in earth," than they had to call earth rock, and allow him the contract price of tunnel in rock for tunnel in earth. In geology, rock includes boulders and also includes earth; for it includes all the solid materials of the earth's crust—clay, sand and peat as well as stony material. But as used in this contract it includes neither earth nor boulders. The contract fixes one price for tunnel in *rock*, another for tunnel in *earth*. It provides that an allowance over the lineal foot price shall be made for *rock* and that no allowance shall be made for *boulders*. The allowance of $30,544.30 for "rock excavated partly in earth" was unauthorized and improper and so much of it as has been paid must be regarded as an over-payment and the remainder deducted from the retained percentage.

5. CONGLOMERATE. During the progress of the work defendant paid the plaintiff $15,000 as an extra allowance for 6,900 lineal feet of the earth section of the tunnel in which was found what plaintiff's witnesses call "conglomerate," and upon the trial the court awarded the plaintiff $54,000 more as an extra allowance and compensation above the price fixed by the contract by reason of the finding of so-called "conglomerate" in 6,900 feet of the earth section of the tunnel. Appellant now claims that the entire allowance for conglomerate was improper; that the $15,000 so paid must be regarded as an over-payment; and appellee, that the entire allowance was proper.

The specifications as we have seen provide that "The contractor must take the work entirely at his own risk. No extra allowance will be made for quicksand, hard-pan or boulders." Hard-pan is "the more or less firmly consolidated detrital material which sometimes underlies a superficial covering of soil. Any bed of mingled clay, sand or pebbles, if firmly compacted is called hard-pan." Cent. Dict., "Hardpan." Jackson, formerly city engineer, a witness for the plaintiff, testified that the so-called "conglom-

erate" was "composed of clay and gravel, a little sand pressed hard, compact and of almost the texture of rock in some places." Ewald, who had been an engineer for the city, testified for plaintiff that the "conglomerate" was very hard compact clay, blue clay containing boulders and blue gravel cemented together." On cross-examination he testified: "I mean by being cemented together that it, the material, is cemented together very compactly, so hard that a pick will hardly injure it. Every time you strike it with a pick it would strike fire.

Q. That would be when it struck a boulder, would it not? A. Yes, sir. If you did not strike a boulder you would strike gravel and when you struck gravel you would strike fire. It was not cemented together with Portland cement. It was pressed hard. That's what I mean."

"Conglomerate is in geology a rock made up of the rounded and water-worn debris of previous existing rocks consisting at least in part of fragments large enough to be called pebbles, also called conglomerate rock." Cent. Dict. "Conglomerate." Upon the testimony of plaintiff's witnesses the so-called conglomerate was hard-pan. It was composed of clay containing pebbles and gravel firmly compacted together. Such a substance is hard-pan under the definition of the word in the books. Hard-pan was well known long before 1895. It had been found in tunnels and in other excavations made in and about Chicago. It is aptly described in the article above quoted from Andreas as follows: "This clay (the boulder clay underlying Chicago) is also replete with pockets having the general shape of boulders and surrounded by compact clay." Hard-pan is mentioned in the specifica tions in the same clause with quicksand and boulders and much that has been said in reference to the allowance for boulders applies with equal force to the allowance for hard-pan and need not be here repeated. The specifications which are a part of the contract state in plain words which leave no room for construction, that "No allowance will be made for hard-pan." This plain and binding provision of the con-tract it is sought to avoid by calling the substance called

" hard-pan" in the contract "conglomerate."   Concede that the substance for which the allowance in question was made may also be properly called "conglomerate," the claim for an extra allowance over the contract price under the contract before us on account of that substance is not thereby made stronger.   That substance as described by plaintiff's witnesses is aptly and accurately named and designated by the word "hard-pan" in the specifications.   It would be a reproach to the law to hold that where a contractor and a municipal corporation have by contract provided that no allowance shall be made for a particular substance therein aptly and accurately named and designated, that the officers of such corporation may make such allowance upon the ground that such substance may be called by another name as well as by the name which the parties in their contract used to designate it.

The so-called conglomerate was taken out in excavating the tunnel in earth.   The tunnel in earth was all excavated and paid for, less the retained percentage, before February 16, 1897, for Estimate 22 of that date shows that 9,903.03 "lineal feet of 8 ft. tunnel at $13.55, $134,189.71," had then been constructed.   Final Estimate 51, dated June 27, 1900, states the total number of feet of tunnel in earth at 9,903.30 lineal feet at $13.35, $134,189.71.   April 2, 1897, more than two months after the last foot of tunnel in earth that plaintiff ever excavated under the contract had been excavated and estimates issued to him therefor at the contract price of $13.55 per lineal foot, the following document was executed by the plaintiff and the Commissioner of Public Works of the defendant and approved by the mayor and city comptroller:

" Whereas, a contract in writing, dated the 30th day of September, 1895, was heretofore entered into by and between Joseph J. Duffy of the one part, and the City of Chicago of the other part, whereby said company agreed to construct for said city a certain section or portion of a tunnel, commonly designated as the Second Section of the Northwest Water Tunnel, according to the terms of said contract and of the specifications forming a part thereof; and,

Whereas, a portion of the material required to be excavated in said section, (being for a distance of about 6,900 feet) is claimed by said Duffy to be neither ordinary earth nor solid rock, but a mixture of the two, constituting an exceptional material exceedingly hard in its nature, requiring practically as much use of explosives as rock, and practically incapable of being excavated with any fair degree of progress without the use of explosives; and,

Whereas, the use of explosives by said Duffy in his work in said section has occasioned many complaints and claims for damages on the part of neighboring residents and property owners; and

Whereas, controversies have arisen between the parties hereto respecting the proper classification under said contract of the aforesaid exceptional material, respecting the use of explosives in said section, and respecting the obligation of said Duffy to protect and indemnify the city against damages and claims for damages resulting from his use of explosives; and,

Whereas, the parties hereto desire to settle said controversies upon a reasonable and just basis;

Now, therefore, for the purpose of making such settlement, it is mutually agreed by and between the parties hereto as follows:

First. Said Duffy shall fully indemnify and protect said city in respect to any and all damages and claims for damages to persons and to property which have heretofore arisen or which shall hereafter arise in consequence of the use of explosives by him at any time in said section. The amount of any and every judgment which may be recovered against said city for damages alleged to have been caused through the use of explosives by said Duffy in said section, with the costs incident thereto, shall be a debt due and payable to said city by said Duffy, and may be deducted from any moneys at any time payable by said city to said Duffy under said contract. Said Duffy shall have notice of every suit for any such damages brought against said city, and shall have the privilege of defending in every case.

Second. For tunnel construction in said material, said Duffy shall, under said contract, be allowed and paid the sum of fifteen thousand dollars ($15,000), under the clause of the specifications providing that

'When the tunnel is partly in earth and partly in rock, the contractor will be paid an additional price per cubic yard for rock excavation over and above the unit price per lineal feet of tunnel in earth.'

Said payment to be in addition to the contract price per lineal foot for tunnel in earth, and to be accepted by said Duffy in full settlement and discharge of any and all claims by him, in connection with that portion of the tunnel (and excavation) made by him through said exceptional material for additional compensation over and above the lineal foot price fixed by the contract for tunnel in earth.

Executed in duplicate, April 2d, 1897.

CITY OF CHICAGO,<br>
By Joseph Downey,<br>
Commissioner of Public Works.<br>
JOSEPH J. DUFFY. [SEAL]

Approved:
> GEO. B. SWIFT, Mayor.
> O. D. WETHERELL, City Comptroller."

The defendant then paid to the plaintiff the sum of $15,000 mentioned in said writing and the plaintiff signed the following voucher and receipt therefor:

" CITY OF CHICAGO, )
    FOR THE    }
DEPARTMENT OF PUBLIC WORKS. )

CHICAGO, April 2d, 1897.

To JOSEPH J. DUFFY, Dr.:

In accordance with settlement made April 2d, 1897, for conglomerate material encountered in 6,900 feet of section 2, new land tunnel.......... $15,000 Fifteen thousand dollars.

Bookkeeper's office.

Audited.

Correct: L. B. JACKSON,
> > City Engineer.

Approved by
> JOSEPH DOWNEY,
> > By JOHN A. MOODY,
> > > Commissioner of Public Works.

Endorsed: Original Voucher, 8,440.

J. J. Duffy, water fund (596)................. $15,000
O. K. S. R. C. & Co., 4.

City comptroller's office. Paid, April 2, 1897.

O. D. WETHERELL.

Received from the City of Chicago, payment in full of the within claim.

Jos. J. DUFFY.

Accepted under protest.

Jos. J. DUFFY."

This document both parties sought on the trial to repudiate; the plaintiff by recovering as part of his judgment $54,000 additional on account of the so-called " conglomerate," and the defendant by insisting that the $15,000 so paid be held an over-payment. No provision of the statute or of any ordinance of the city, authorizing the city officers to execute this document, has been called to our attention. The last of the tunnel in earth had been excavated two months before it was executed.

The specifications provide that " the use of explosives will not be allowed or permitted except in rock excavation." The " exceptionally hard material " mentioned in said document was found in excavating the tunnel in earth, and the city officials first permitted the plaintiff to use explosives. If damages to property owners resulted from the use of such explosives, such damages had already been sustained.

The contractor took the work entirely at his own risk under a contract that provided that no allowance would be made for hard-pan. The statute required the city in the first instance to let the contract to the lowest responsible bidder, and it could let the contract in no other manner. Chicago v. Hanreddy, 211 Ill. 24. A contract made pursuant to the statute is binding upon the parties to it. To hold that the parties to such a contract may by a new or supplemental contract provide that the contractor shall be paid a large sum of money in addition to the contract price for the work he had contracted to do would be to nullify the statute, and as was said in Chicago v. Hanreddy, *supra*, " would open wide the door to fraud, destroy competition, and enable city officials to do indirectly what in express terms they are forbidden from doing by the statute." Much is said in the brief for appellee about the misleading character of the borings made by the defendant before the con-

City of Chicago v. Duffy.

tract was let, but there is neither allegation nor proof that any fraud was practiced on the plaintiff in respect to such borings. Much is also said about the unexpected finding of "conglomerate," boulders and quicksand in the path of the tunnel. It matters not whether the plaintiff did or did not expect to find hard-pan, boulders or quicksand in the path of the tunnel. That path, seventy feet beneath the surface, was the path of the miner described in the Song of the Miner in the Book of Job as

"A path which no fowl knoweth, and which the vulture's eye hath not seen :

The lion's whelps have not trodden it, nor the fierce lion passed by it."

The plaintiff saw fit to contract with the defendant to take the work of constructing the tunnel at his own risk and to stipulate in that contract that no allowance should be made to him for hard-pan, boulders or quicksand, and by that contract he is bound. The officers of the defendant had no authority to make for the defendant a new contract with the plaintiff that the defendant should pay the plaintiff $15,000, or any other sum of money, in addition to the contract price per lineal foot for tunnel in earth, either because "conglomerate" or "exceptionally hard material" was found in excavating that part of the tunnel, or because of the plaintiff's agreement to indemnify the defendant against claims for damages resulting from the use of explosives in excavating the tunnel.

The payment of the $15,000, paid in pursuance of the contract of April 2, 1897, must be regarded as an over-payment by defendant to plaintiff, and the recovery in the judgment of $54,000 in addition to the contract price for tunnel in earth because "conglomerate" or "exceptionally hard material" was found in excavating that part of the tunnel must be held improper and erroneous.

6. STONE. Appellant insists that plaintiff should have been charged with a very large sum of money for the stone which was taken out of the tunnel, which the contract provided should be the property of the city. The evidence does not show that the plaintiff had received anything for

such stone, but on the contrary that he paid considerable sums of money to have the same removed; nor does it show that the stone at the mouth of the shaft had a market value nor that it could have been sold at any price. We find in the record no evidence to warrant an allowance against the plaintiff for the stone taken out of the tunnel.

7. TWO RING TUNNEL IN EARTH. Eight hundred and sixty feet of the tunnel in earth was originally built with but two rings of brick, in plain violation of the contract, which required three rings except where the tunnel was in solid rock. The Commissioner of Public Works, when the fact that so much of the tunnel had been thus built came to his notice, required the plaintiff to put a third ring of brick inside the other rings, which he did at his own expense. This part of the tunnel as originally built was only of the required diameter of eight feet, and this diameter was, of course, reduced by placing a third ring of brick inside the other rings. Appellant insists that the plaintiff should be charged with what it would cost to take out this 860 feet of masonry and put in its place three rings of brick with an internal diameter of eight feet. This claim cannot be sustained. It may be that the defendant, when the fault was discovered, could have required the plaintiff to take out the masonry and put in the masonry required by the contract. But it saw fit, through its officers, to require him to put a third ring of brick inside the other rings and could not afterwards require him to rebuild that part of the tunnel in strict compliance with the contract or now charge him with what it would cost so to rebuild it. We find in the record no evidence upon which to base a computation of the pecuniary damages, if any, which the defendant sustained by reason of the reduction of the capacity of the tunnel by such reduction in its internal diameter.

8. DAMAGES FOR DELAY. Each party at the trial claimed damages against the other for delay. The claim of the defendant was made under the provisions of the contract that the work should be completed by October 1, 1897, and that the plaintiff should forfeit as liquidated damages $200 per

City of Chicago v. Duffy.

day for each day after that date that the tunnel remained unfinished, and that any sum of money so forfeited should be retained by the defendant out of any money due plaintiff under the contract.   The claim of the plaintiff was for damages alleged to have been sustained by him as the result of the suspension of work from July, 1897, to April, 1899.   The claim of the defendant was rejected by the trial court but that court allowed the plaintiff as damages for delay $13,367.50.   This amount is made up as follows:

| | | |
|---|---|---|
| Cost of pumping out of shaft | $4,000 | 00 |
| Increase in the price of labor | 9,000 | 00 |
| Telephone at work during period of suspension | 187 | 50 |
| Rent of office of plaintiff at the works during same period | 180 | 00 |
| | $13,367 | 50 |

The facts relied upon to justify this award of damages to the plaintiff for delay are the following:   Before the suspension the plaintiff had excavated 4,707 feet of tunnel in rock.   A controversy arose between the parties as to the price plaintiff was entitled to be paid for such excavation in rock under the contract.   Plaintiff contended that he was entitled to $10 per cubic yard for the rock excavated, in addition to the lineal foot price of $17.75 per foot, and defendant that the plaintiff was only entitled to the lineal foot price.   Plaintiff, in July, 1897, brought an action in assumpsit against the defendant upon the contract. The trial court held that he was entitled to recover $10 per cubic yard for the rock necessarily excavated, in addition to the lineal foot price, and rendered judgment in his favor for $204,328.52.   The Supreme Court affirmed the holding of the trial court as to the construction of the contract but held that the defendant was entitled to a credit of $57,495.80.. The plaintiff entered a remittitur for that sum and that judgment was affirmed for $146,832.72 in April, 1899.   This judgment was at once paid and the plaintiff resumed work and completed the tunnel in April, 1900.   The plaintiff upon the trial of the case testified that he was "broke" when he

suspended work in July, 1897, and that by reason of the failure of the defendant to pay him for the work done up to that time according to the terms of the contract as construed by the Supreme Court he was unable to proceed with the work. Appellee's counsel insists that the delay is to be regarded as an enforced delay caused by the defendant and that therefore plaintiff was entitled to recover whatever damages he sustained by reason of such delay. The action brought by the plaintiff against the defendant in 1897 was for the breach of the contract in the refusal of the defendant to pay plaintiff $10 per cubic yard for the rock excavated in constructing the tunnel in rock. The damages for delay made a part of the recovery in this case are damages which plaintiff claimed resulted to him from the refusal of defendant to pay, as it became due, the money for which he recovered judgment in his former suit. The general rule as to damages in case of a breach of contract for the mere payment of money is thus stated in 1 Sutherland on Damages, 1st ed., 127:

"1.. *On a contract for the mere payment of money*, the unpaid principal, together with the stipulated, or, after maturity, the lawful rate of interest, is the measure of damages. It is the invariable measure of recovery in a creditor's action against his debtor. The failure to pay a debt when due, may disappoint the creditor and embarrass him in his affairs and collateral undertakings; he may consequently suffer losses for which interest is a very inadequate compensation; but such losses are remote, and do not result alone from the default of his debtor. Money, like the staples of commerce, is, in legal contemplation, always in market, and procurable at the legal rate of interest; and the same principle which limits a disappointed vendee's recovery, against his defaulting vendor, to the market value of the commodity which is the subject of his contract, restricts the creditor to the principal and interest. The practical difficulty to a creditor of borrowing money, where the debtor is withholding the sum wanted which he owes, and that of a vendee to make a new purchase after he has paid the defaulting vendor for the goods wanted, is the same. No party's condition, in respect to the measure of damages, should be worse for having

City of Chicago v. Duffy.

failed in his engagement to a person whose affairs are embarrassed, than if it had been made with one in prosperous or affluent circumstances."

There are certain exceptions to the general rule but this case is not within any of the exceptions. The cases cited in the brief for appellee upon this point are cases where the breach for which the recovery was had was not a failure to pay money, and the rule of damages in such cases is different from the rule where the breach is a failure to pay money. "For breach of other contracts than to pay money the injured party is entitled to compensation for gains prevented and losses sustained." 1 Suth. on Dam. 130. It is no answer to the objection against the allowance to plaintiff in this case of compensation for losses sustained by him by reason of the failure of defendant to pay to him money when it became due, to say that as a general rule, at least, interest cannot be recovered in this state against a municipal corporation in the absence of an express contract to pay interest. If the rules of law would not permit the plaintiff to recover in his first suit interest, as such, or as damages for unreasonable and vexatious delay in the payment of the money for which he recovered his first judgment, such rules of law cannot be made the foundation of a recovery by him in this case for losses sustained by him by reason of the delay of the defendant in paying the money for which that judgment was recovered.

There is another objection to the allowance in this case of compensation for losses sustained by plaintiff by reason of delay in the payment of the money for which his first judgment was recovered. His cause of action in that case was the breach of that clause of the contract by which defendant agreed to pay him $10 per cubic yard for the stone necessarily taken out in excavating the 4,707 lineal feet of tunnel in stone. "A cause of action and the damages recoverable therefor are an entirety. The party injured must be plaintiff, by the common law, and he must demand all the damages which he has suffered or ever will suffer from the injury, grievance or cause of action, upon which his action

is founded. He cannot split a cause of action and bring successive suits for parts, because he may not be able at first to prove all the items of the demand, or because all the damages have not been suffered. If he attempt to do so, a recovery in the first suit, though for less than his whole demand, will be a bar to the second." In Camp v. Morgan, 21 Ill. 255–258, Mr. Justice Walker said : " The doctrine is well settled, and is uniform in both the courts of Great Britain and of this country, that a plaintiff cannot so divide an entire demand, or cause of action, as to maintain several actions for its recovery. And if he sue and recover a judgment for a part only of such a claim, the remaining portion is barred by that recovery." See also Hoblit v. Bloomington, 71 Ill. App. 202. In our opinion the court erred in allowing the plaintiff any compensation for the losses he sustained by reason of his suspension of work upon the tunnel. But we are also of the opinion that the refusal of defendant to pay the very large sum of money due him under the contract, as construed by the Supreme Court, for rock taken out of the tunnel up to the time he suspended work in 1897, constitutes a sufficient excuse for his delay in the completion of the work and prevents the defendant from recovering anything on account of the stipulation for $200 per day damages for such delay.

After the tunnel had been completed, Morse Ives, a citizen and taxpayer of Chicago, filed a bill in the Superior Court against the City of Chicago, certain of its officers, and the plaintiff in this suit, to enjoin the city from making any further payment to the plaintiff under the contract here sued on, upon the ground that the city under the contract had a valid claim against the plaintiff for a large sum of money as damages for his failure to complete the tunnel within the time fixed by the contract. The defendants answered the bill, but no injunction was ever ordered. The defendant in the present case did not plead the pendency of the chancery suit, but put in evidence a transcript of the pleadings and proceedings therein, and at the close of the evidence in this case moved the court to dismiss the action for

City of Chicago v. Duffy.

want of jurisdiction of the subject-matter and here assigns for error the denial of that motion.

We think the denial of the motion was proper, first, because the pendency of the chancery suit did not deprive the plaintiff of the right to sue at law on the contract, and second, because the defendant by pleading to the merits waived the right to insist upon the pendency of the chancery suit as a defense to this suit.

It follows from what has been said, that in our opinion, the judgment of the Circuit Court must be reversed, but in place of remanding the cause for a new trial we think it proper in this case to give final judgment here.

We find that the following amounts were erroneously included in and made a part of plaintiff's recovery, viz. :

| | | |
|---|---:|---:|
| For " Conglomerate "..............$ | 54,000 | 00 |
| For damages for delay.............. | 13,367 | 50 |
| For back masonry in tunnel in rock in excess of the amount plaintiff was entitled to recover therefor........ | 21,454 | 20 |
| That the following amounts paid plaintiff must be held over-payments and the appellant given credit therefor on the amount due appellee for back masonry or retained percentage, viz: | | |
| Paid for back masonry in tunnel in earth............................... | 29,424 | 80 |
| For boulders........................ | 30,544 | 30 |
| On contract of April 2, 1897......... | 15,000 | 00 |
| | $163,790 | 80 |
| The judgment is for................ $ | 301,376 | 08 |
| Amount to be deducted............. | 163,790 | 80 |
| | $137,585 | 28 |

We find that the amount the appellee Joseph J. Duffy is entitled to recover from the appellant the City of Chicago in this case is one hundred and thirty-seven thousand five hundred and eighty-five dollars and twenty-eight cents ($137,585.28), and for that amount there will be judgment here in favor of appellee and against appellant.

The Circuit Court in the judgment order, after judgment in the usual form, added the words: "It is further ordered that said amount be paid from the defendant's water fund." This was, we think, improper.

An examination of the record in Chicago v. Duffy, *supra*, shows that the judgment in that case was in the usual form, without any order that the judgment be paid from any particular fund. In attachment or other proceeding *in rem* a judgment may specify the fund out of which satisfaction is to be made. But this suit was *in personam* and the judgment in such a suit leaves the plaintiff to pursue the remedy which the law provides to obtain satisfaction of his judgment.

*Reversed, judgment here with finding of facts.*