THE MARTIN EMERICH OUTFITTING COMPANY, Plaintiff in Error, vs. SIEGEL, COOPER & Co., Defendant in Error. ·

*Opinion filed December 15; 1908—Rehearing denied Feb. 4, 1909.*

1. CONTRACTS—*destruction of a particular thing necessary to performance of a contract excuses performance.*  In contracts the performance of which requires the continued existence of a particular person or a particular thing, a condition is always implied that the death of such person or the destruction of such thing shall excuse performance.

2. SAME—*motives and intentions of parties must be determined from the contract.*  The motives and intentions of the parties can only be known from the writing to which the contract is reduced, and no assumption which is contrary to the language used can be based upon a consideration of the circumstances surrounding the parties when the contract was made.  .

3. SAME—*when a contract requires continued existence of particular building.*  A contract between a furniture company and a department store, whereby the former is to occupy with a line of furniture the "third floor" of a described building in which the department store is being conducted, is a contract for the conduct of business in the particular place described, and the destruction of the building relieves both ＿parties from further obligations under the contract if there is no provision therein to the contrary.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. R. W. CLIFFORD, Judge, presiding.

NEWMAN, NORTHRUP, LEVINSON &! BECKER, and ARTHUR B. SCHAFFNER, for plaintiff in error:

The contract between the parties should be fairly and · liberally construed with regard to all its stipulations, and in the light of the circumstances surrounding the parties at the time it was made, the objects which they had in view and the construction which they have themselves given to it. 17 Am. & Eng. Ency. of Law, (2d ed.) 18, 23; *Merriam* v. *United States,* 107 U. S. 437; *Russell* v. *Allerton,* 108

N. Y. 288; *Gas Co.* v. *Worcester,* 110 Mass. 353; *Car Co.* v. *Railway Co.* 121 Fed. Rep. 609; *Dick Co.* v. *Letter File Co.* 157 Ill. 325; *Terra Cotta Lumber Co.* v. *Owen,* 167 id. 360; *Torrence* v. *Shedd,* 156 id. 202; *Fitzgerald* v. *Bank,* 114 Fed. Rep. 474; *Work* v. *Welsh,* 160 Ill. 468.

The subject matter of the contract was not the particular space designated, but the right and duty of plaintiff to conduct the furniture department of defendant's business in a building occupied by it. *Dickinson* v. *Hart,* 142 N. Y. 183; *Corn* v. *Board of Education,* 39 Ill. App. 446; *Mayer* v. *Temple Beth-El,* 23 N. Y. Supp. 1013.

If the contract was susceptible of substantial performance by defendant, it was its duty to perform substantially if a literal performance became impossible. Wald's Pollock on Contracts, (Williston's ed.) 542; 2 Parsons on Contracts, (8th ed.) 786, 787; 7 Am. & Eng. Ency. of Law, (2d ed.) 148; *Bacon* v. *Cobb,* 45 Ill. 47; *Williams* v. *Vanderbilt,* 28 N. Y. 217; *Turner* v. *Goldsmith,* 1 Q. B. 544; *White* v. *Mann,* 26 Me. 361; *Corn* v. *Board of Education,* 39 Ill. App. 446.

If the obstacle to the performance of the contract by defendant was only temporary, then when such temporary obstacle was removed defendant was obliged to perform or respond in damages. 1 Wharton on Contracts, sec. 313; *Lumber Co.* v. *Dole,* 43 Mich. 370; *Hadley* v. *Clarke,* 8 Term. Rep. 259; *Baylies* v. *Fettyplace,* 7 Mass. 325.

Whether the contract could be substantially performed or not was a question of fact and should have been submitted to the jury. *Edgecomb* v. *Buckhout,* 146 N. Y. 332; *Poussard* v. *Spiers,* L. R. 1 Q. B. 410.

AUGUSTUS BINSWANGER, for defendant in error:

In contracts from the nature of which it is apparent that the parties contracted on the basis of continued existence of a given person or thing, a condition is implied that

if the performance becomes impossible from the perishing of the person or thing, that shall excuse such performance. 2 Chitty on Contracts, (11th Am. ed.) 1076.

Where, from the nature of the contract, it appears the parties must from the beginning have known that it could not be fulfilled, unless, when the time for the fulfillment arrived, some particular specified thing continued to exist, so that when entering into the contract they must have contemplated such continuing existence as the foundation of what was to be done, then, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the perishing of the thing without the default of the contractor. *Taylor* v. *Caldwell,* 3 Best & Smith, 826.

The case of *Taylor* v. *Caldwell* has been cited and the doctrine therein enunciated has been approved by this court in *Walker* v. *Tucker,* 70 Ill. 527, *Siegel, Cooper & Co.* v. *Eaton & Prince Co.* 165 id. 550, *Huyett & Smith* v. *Edison Co.* 167 id. 233, and *Smith* v. *Preston,* 170 id. 179.

Mr. JUSTICE DUNN delivered the opinion of the court:

In an action of assumpsit the court directed a verdict for the defendant, on which judgment was rendered in its favor, which was affirmed by the Appellate Court. A writ of error is prosecuted to reverse the judgment of affirmance.

In 1890 the Martin Emerich Outfitting Company, the plaintiff in error, was engaged in the retail furniture business at 261 and 263 State street, in Chicago, occupying six floors and the basement at those numbers. On July 12, 1890, it entered into a written contract with Siegel, Cooper & Co., the defendant in error, whereby, after reciting that the plaintiff in error was desirous of offering for sale in the premises of defendant in error, in the following described

space, viz., the entire third floor of the buildings known as 211, 213 and 215 State street and the south twenty-five feet front of the third floor of the main building, corner State and Adams streets, being 25x80 feet, more or less, a full line of furniture, mattresses, springs and all articles strictly appertaining to such a business, and the defendant in error was willing to grant the use of said space to the said party of the second part on certain terms and conditions, it was agreed that the defendant in error should set apart for the use of the plaintiff in error the space above mentioned, for the sale by the plaintiff in error of furniture, mattresses, springs and articles strictly appertaining to the furniture business, and that the plaintiff in error should use said space for said purpose; should keep it in like clean and good condition as other parts of the building at all times; should carry at all times a first-class stock of furniture, and sell the same for cash, and at as low a price as the same quality should be sold by any other merchant or dealer in the same line within a radius of two miles, but should not at any time be compelled to sell any article below cost price; should conduct the business in a businesslike manner; should employ such help only as should be satisfactory to the defendant in error, which help must comply with and be subject to the regulations governing the general employees of defendant in error; should enter into no contracts nor incur any liabilities in the name of the defendant in error; should not erect any signs or make any display distasteful to the defendant in error; should report at the office of defendant in error each business day the gross sales of said department; should keep account of all the transactions of the department in books which should always be open to the inspection of defendant in error; should pay for all expenses of said furniture department, and furnish a cashier, who should receive all moneys for sales made in said furniture department and should turn them over to the defendant in error at the close of each business day. Settlement was to

be made each week for all sales during the preceding week, at which time a statement of receipts and expenses was to be rendered. Plaintiff in error agreed to furnish all wagons and horses needed in the delivery and handling of the goods sold in said furniture department, the wagons to be of uniform color and bear the name of "Siegel, Cooper & Co.— Furniture Department," in lettering like that used on all the delivery wagons of the defendant in error; to deliver promptly and free of charge, within the city limits, all furniture sold in the department, and to advertise the department in the daily papers in the name of Siegel, Cooper & Co. to the extent of not less than $5000 during the first year of the agreement, and a like amount, or more, during each year thereafter, all advertisements to be submitted to and approved by the defendant in error. The advertising was to be paid for with the advertising bills of the defendant in error and charged to the plaintiff in error at same rate as paid by the defendant in error. The plaintiff in error agreed to pay the defendant in error for the use of said space, on the first day of each month, beginning with September 1, 1890, the sum of $500 per month. Should the gross sales in the department after September 1, 1891, exceed $75,000 during any year, then the plaintiff in error agreed to pay, in addition to the monthly rental, five per cent of the amount of sales in excess of $75,000 at the end of the fiscal year. The plaintiff in error further agreed to purchase from the defendant in error all the furniture, and all articles pertaining to the furniture department, then in the premises of the said defendant in error. It was further agreed that in case of death or the dissolution of the plaintiff in error, the defendant in error should have the right and power to cancel the agreement on giving thirty days' notice to the legal representative of the plaintiff in error. The defendant in error agreed to furnish, in connection with said space, like heat, light and elevator service as it fur-

nished in the regular course of business to its other departments. The agreement was to continue in force for five years from the first day of September, 1890, with the privilege on the part of the defendant in error to cancel it and re-take possession of said space at any time when the plaintiff in error, in the opinion of the defendant in error, should fail to fulfill any of its agreements, but the agreement was not to be canceled nor possession of said premises taken by the defendant in error until after written notice to the plaintiff in error in what manner the agreement had been violated, in order to enable the plaintiff in error to rectify any act of omission or commission in or connected with said furniture department business. A failure, after such written notice, to immediately rectify such an act of omission or commission, or a willful repetition of such or similar acts, should authorize the cancellation of the agreement by the defendant in error upon giving the plaintiff in error thirty days' notice of its intent to cancel this agreement. From September 1, 1890, the plaintiff in error occupied the space designated for several months, at the expiration of which time a change was made, whereby the plaintiff in error gave up a part of the space on the north and received space on the south somewhat greater, and the monthly payment of $500 was increased to $615. On August 3, 1891, the buildings mentioned in the contract were totally destroyed by fire. The defendant in error in a few days moved into other quarters at the corner of Wabash avenue and Adams street, and later moved to the corner of State and VanBuren streets, where it continued to conduct its business. Plaintiff in error requested to be allowed to occupy space in the new location, but was refused, the defendant in error claiming that the destruction of the building had put an end to the contract, and this is the vital question in the case.

In contracts to whose performance the continued existence of a particular person or thing is necessary, a con-

dition is always implied that the death or destruction of that person or thing shall excuse performance. Thus, contracts for the performance of personal services terminate upon the death of the party by whom the services are to be performed. (*Smith* v. *Preston,* 170 Ill. 179.) A covenant by a lessee of a coal mine to work the same for the period of ten years under his lease is discharged by the exhaustion of the mine. (*Walker* v. *Tucker,* 70 Ill. 527.) Under a contract to place certain machinery in a particular building, the building and the machinery having been destroyed by accidental fire before the completion of the contract, it was held that both parties were excused from further performance of the contract. (*Appleby* v. *Myers,* L. R. 2 C. P. 651; *Siegel, Cooper & Co.* v. *Eaton & Prince Co.* 165 Ill. 550; *Huyett & Smith Manf. Co.* v. *Chicago Edison Co.* 167 id. 233.) A contract to let at a stated daily price a music hall for giving a series of concerts was held to be conditional upon the continued existence of the hall and was put an end to by the destruction of the hall by fire. (*Taylor* v. *Caldwell,* 3 B. & S. 826.) A lease of rooms in a building is terminated by the destruction of the building by fire; (*Kerr* v. *Merchants' Exchange Co.* 3 Edw. Ch. 333; *Alexander* v. *Dorsey,* 12 Ala. 12; *Winston* v. *Cornish,* 5 Ohio, 477;) and in case a new building is erected having a similar space in the same location as in the old building, the tenant is not entitled to occupy it. *Stockwell* v. *Hunter,* 11 Metc. 456.

The plaintiff in error contends, however, that this contract was not for the occupation of any particular space in a specified building, but was rather for the conducting of a department of the business of the defendant in error. It may be conceded that the relation of the parties was not that of landlord and tenant, but their agreement concerned the occupation of certain space in the building. The plaintiff in error had the right to occupy that space, and no other. The defendant in error had no right to demand that

the plaintiff in error should conduct the business elsewhere. When the contract was entered into, Siegel, Cooper & Co. was engaged in business at the corner of State and Adams streets, and the plaintiff in error had a large store and warerooms not far away, on State street. The parties, for their mutual benefit, contracted that the plaintiff in error should take charge of the furniture department of the defendant in error. Their motives and intentions can only be known from the writing to which the contract was reduced. By that writing it is recited that the plaintiff in error desired to offer for sale in certain specified parts of the premises of the defendant in error a line of furniture, etc., and it was the use of these particular premises for this purpose which defendant in error granted. No other space in the building or in any other building was contemplated. The defendant in error would have had no right to require plaintiff in error to change to the fourth floor or the second. The plaintiff in error had the right, for five years, to insist upon occupying that particular space, and the defendant in error had no right to require it to go to another. The parties apparently did not contemplate any change of location. The defendant could not voluntarily have removed to another location and required the plaintiff in error to carry on the furniture business in the new location.

The plaintiff in error insists that the contract must be construed in the light of the circumstances surrounding the parties and of the objects they had in view, and that the primary object in view was the carrying on the furniture business by the plaintiff as a part of the business of the defendant. This is an assumption contrary to the language of the instrument, which provides in the last clause only that the privilege of the plaintiff in error to conduct said furniture department should be exclusive of any other like department in said premises. It is manifest that the idea of a change of location was not in the minds of the par-

ties in making the agreement. It was supposed the business would continue at the same place during the whole term of the agreement. The burning of the building and its effect upon the rights of the parties were not in their minds. The difficulties of providing either for such contingency or the case of a voluntary removal are manifest. If the building and the stock of defendant in error were totally destroyed, would it be required to start in business again? Could it start on a much smaller scale, or would it be required to carry as large a stock and occupy as extensive quarters as before the fire? Would the plaintiff in error be obliged to follow it wherever it might choose to go? Within what distance should it re-locate its business and how far would the plaintiff in error have to follow? What proportion of the reduced or increased space would the plaintiff in error be entitled to and would it be obliged to pay for? All these questions would necessarily have to be decided, but the contract made no provision for them. If they were thought of by the parties they were intentionally omitted because of the difficulty of providing for them.

If the contract was, as we hold, a contract for the conduct of the business in a particular place, then it could not be substantially performed by carrying on the business in another place. To require the plaintiff in error to conduct the business, or to require the defendant in error to permit it to be conducted, at a place and under conditions different from those mentioned in the agreement would not be a substantial performance of the contract they had entered into but an imposition of terms to which they had not agreed. The continued existence of the building was a necessary condition to the performance of the agreement, and its destruction relieved the parties from further obligation to perform the contract.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Subsequently, upon consideration of the petition for a rehearing, the following additional opinion was filed:

The plaintiff in error, in a petition for a rehearing, calls our attention to the statement in the original opinion that the vital question in the case is whether the destruction of the building put an end to the contract, in connection with the alleged fact that the principal building in which the plaintiff in error was conducting the furniture business under its contract with the defendant in error was not destroyed by the fire. The cause was decided here upon the record made in the trial court and was tried in that court upon the case made by the pleadings. The two original counts did not mention the fire, but declared upon the refusal of the defendant in error to set apart to the plaintiff in error the portion of the premises described in the contract between them. Two additional counts, after averring the taking possession by the plaintiff in error of the premises described in the contract, alleged their destruction by fire, the occupation of other premises by the defendant in error, and its refusal thereafter to set apart, for the use of the plaintiff in error in carrying on said furniture business, any space in the premises then occupied by the defendant in error. No mention is made in the pleadings of any right of plaintiff in error before the fire to occupy any premises other than those mentioned in the contract or of its occupation of any other premises, nor is any such right made the basis of any claim against the defendant in error. Naturally, therefore, no such right could be considered either by the trial court or by this court.

It is also said that the defendant in error collected and retains the payment specified in the contract for the month of August, 1891, though the fire occurred on the third day of that month, and that the defendant cannot retain this payment and the contract at the same time be regarded as canceled as of the date of the fire. The destruction of the

building terminated the contract. Whether or not the plaintiff in error could recover the over-payment is a question which does not arise, as the declaration is not based upon such claim.	*Rehearing denied.*