M.A.T.H., Inc., Plaintiff-Appellee, *v.* Housing Authority of East St. Louis, Defendant-Appellant.

(No. 74-378;

Fifth District—January 15, 1976.

Edward Neville, of East St. Louis, for appellant.

James J. Gomric, of Belleville, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This action was brought by plaintiff, M.A.T.H., INC., a corporation, to recover damages from the defendant, Housing Authority of East St. Louis, Illinois, for its refusal to revise a contract previously entered into by the parties. The circuit court of St. Clair County, rendered its verdict for the plaintiff and assessed damages in the amount of $68,414.56. From the judgment on the verdict, this appeal is brought by the defendant.

On April 27, 1971, the parties entered into a written contract whereby the defendant was to pay to the plaintiff a sum of $105,000; the plaintiff, in return, agreed to:

> "furnish all labor, material, equipment and services, and perform and complete all work required for Installing Floor Covering at Project Ill. 1-1, Samuel Gompers Homes, and Project Ill. 1-2, John Robinson Homes, East St. Louis, Illinois, in strict accordance with the Specifications, and Addenda thereto numbered ＿＿＿ and ＿ ＿＿, dated ＿＿ ＿ ＿＿ ＿, and Drawings referred to therein, all as prepared by the Housing Authority of the City of East St.

Louis, Illinois, which said Specifications, Drawings and Addenda are incorporated herein by reference and made a part hereof."

Plaintiff's exhibit No. 4 contained the "Specifications" for the work and is dated February 3, 1971. The contract specifically provided that the "Specifications" were to be a part of the contract.

The plaintiff received notice to proceed with the contract on June 17, 1971, directing that the actual work commence on July 1, 1971. The actual work, however, was not commenced until sometime in October, 1971. The delay was occasioned by the plaintiff's failure to obtain a performance bond.

■■ The basis of the plaintiff's lawsuit is that circumstances arose subsequent to the entering into the contract which caused the cost of doing the job to increase $36,840.76 for additional labor and $3,565.80 for additional material. The plaintiff contends that it was induced to continue to perform the contract by a promise made by the Chairman of the Housing Authority to renegotiate the contract after the completion of the contract. This promise was made by letter dated May 13, 1971. There is sufficient credible evidence to indicate that the letter was written and was received by the plaintiff. The plaintiff and the defendant were not, however, able to consummate a renegotiation of the contract.

The defendant now asserts that there was no duty for it to renegotiate the contract. We concur with the defendant for the following reasons:

The defendant is incorporated under the Housing Authorities Act (Ill. Rev. Stat. 1973, ch. 67½, par. 1 *et seq.*). This Act provides in section 8 and section 17 that an authority shall be a "municipal corporation." Section 8.2 provides, in part, that "any contract * * * for repair, improvement or rehabilitation of existing improvements which involves in excess of $2500 shall be let by free and competitive bidding to the lowest responsible bidder * * *." This section further provides, "In case of emergency affecting the public health or safety declared by a majority vote of the Commissioners of the Housing Authority, Contracts may be let, to the extent necessary to resolve such emergency, without public advertisement or competitive bidding." There is no contention or indication that the matter before the court involved an emergency situation.

■■ The statute does not grant to the Chairman or any other member of the Housing Authority any power to contract. It is the law of this State that "Every person is presumed to know the extent of the powers of a municipal corporation, and is required to take notice of the limitations upon those powers." (*Haas v. Commissioners of Lincoln Park,* 339 Ill. 491, 171 N.E. 526.) There are no powers of which we are aware, or which our research has unearthed, that imply that the commission can

"renegotiate" a contract of this type. Indeed, as stated in *City of Chicago v. Duffy*, 117 Ill.App. 261, *aff'd*, 218 Ill. 242, 75 N.E. 912:

> "A contract made pursuant to the statute is binding upon the parties to it. To hold that the parties to such a contract may by a new or supplemental contract provide that the contractor shall be paid a large sum of money in addition to the contract price for the work he had contracted to do would be to nullify the statute, and as was said in Chicago v. Hanreaddy, *supra*, 'would open wide the door of fraud, destroy competition, and enable the City officials to do indirectly what in express terms they are forbidden from doing by the Statutes.'" 117 Ill.App. 261, 284.

The cases cited by the plaintiff do not involve municipal corporations and therefore are of no assistance to us in our determination of the issue raised by the defendant.

■■ We find the law clear as stated by our Supreme Court in the 1879 case of *Tamm v. Lavalle*, 92 Ill. 263, 273:

> "Complainants must have known that this was in plain contravention of the law, and that the act of the supervisor was *ultra vires*. They were dealing with a person deriving all his powers from the statute, and it was their duty to see he was acting within the scope of his authority, and failing to do so, they could acquire no rights by violation of the terms of the statute."

See also *Roemheld v. City of Chicago*, 231 Ill. 467, 470-71, 83 N.E.2d 291.

■■ This law is still valid. Current decisions show no indication of repudiating any of the foregoing principles. (*Appeal Board v. United States Steel Corp.*, 48 Ill.2d 575, 577, 272 N.E.2d 46; *Chicago School Transit, Inc. v. City of Chicago*, 35 Ill.2d 82, 219 N.E.2d 522. See also Annot., 33 A.L.R.3d 1164 (1970), and Annot., 135 A.L.R. 1265 (1941).) As we have noted, there is no basis for any inference of any power to renegotiate. Indeed, the statute is specific as to the manner in which the contract shall be entered into under normal circumstances and then makes further provisions for emergency situations.

■■ There is, of course, the argument that the defendant should be estopped from denying the acts of its agent beyond the authority conferred upon him. As a general rule, the authority cannot be estopped unless there are special circumstances. The special circumstances are those situations wherein the innocent party would suffer a substantial loss *and* the municipality would be permitted to stultify itself by retracting what its agents had done. The question then would be whether or not the plaintiff's actions in completing the job were induced by the letter of the Chairman of the Housing Authority and that the plaintiff had suffered

substantial loss. (*City of Marseilles v. Hustis*, 27 Ill.App.3d 454, 325 N.E. 2d 267; *Cities Service Oil Co. v. City of Des Plaines*, 21 Ill.2d 157, 171 N.E.2d 605.) The plaintiff had a duty to perform the contract. Had it not done so, it may have been liable for damages. We do not find the existence of special circumstances that would allow the authority to be estopped by the acts of its agents, which went beyond the authority of its agents.

The judgment of the trial court is reversed and the case remanded to the court below for entry of judgment in favor of the plaintiff for an amount which represents the sum that remains unpaid on the contract.

Reversed and remanded with directions.

KARNS, P. J., and CARTER, J., concur.