*In re* ESTATE OF FLORIAN BAJONSKI (William Manhart, Petitioner-Appellant, v. Andrew Bajonski, Adm'r of the Estate of Florian Bajonski, *et al.*, Respondents-Appellees).

First District (2nd Division)   No. 83—2866

Opinion filed November 20, 1984.—Rehearing denied January 8, 1985.

Keith A. Ligon, of Chicago, for appellant.

Sneider & Troy, of Chicago (Richard J. Troy and William G. Hutul, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:
On November 1, 1983, the probate division of the circuit court en-

tered an order granting the motions of Andrew Bajonski, administrator of the estate of Florian Bajonski, and Elizabeth Bajonski Harper, heir, to dismiss with prejudice the petition of William Manhart to complete contract of decedent. The court ruled, as a matter of law, that the contract entered into between Manhart and the decedent required the personal service of the decedent and, consequently, terminated upon his death.

Florian Bajonski died on December 18, 1979, and Andrew Bajonski was appointed administrator of the estate. An asset of the estate which forms the subject matter of this litigation is an oil painting known as "The Convinced St. Thomas." Manhart claims that, on December 15, 1978, prior to Florian Bajonski's death, he and Florian Bajonski had entered into an agreement that was modified on May 28, 1979, in reference to the painting. The agreement purports to give Manhart the exclusive right to sell the painting, receiving a percentage of the sale price as payment for his services. The pertinent provisions of the December 15, 1978, agreement provide as follows:

> "I. F. Bajonski hereby give and grant William Manhart exclusive right of sale of my Rembrandt painting entitled [illegible-said to read "The Convinced St. Thomas]. The terms of such sale, encluding [sic] the price shall be subject to my acceptance, there of upon the closing of said sale I shall pay you from the proceeds 10% of gross net price.
>
> /s/ Florian B. Bajonski."

The agreement was modified on May 28, 1979, as follows:

> "In the above contract William Manhart and Florian Bajonski agree to raise the percentage to 20% as of May 28, 1979, due to the fact that William Manhart will be responsible for all expenses connected with this painting as of May 28, 1979. Exclusive begins as of May 28, 1979 and ends upon sale of painting.
>
> /s/ William H. Manhart      /s/ Florian B. Bajonski."

The record discloses that the primary purpose of the above agreements was to authenticate the painting as a work by the master Rembrandt and to then secure a buyer for the authenticated painting. Neither the authentication nor the sale were completed during the lifetime of Florian Bajonski. Manhart's petition to complete contract alleges expenditures of $13,613.66 prior to Bajonski's death, apparently spent by Manhart in his effort to authenticate the painting, and a total of $83,397.00 spent at the time the petition was filed on March 28, 1980.

Subsequent to Florian Bajonski's death on December 18, 1979, the

administrator of his estate entered into a written agreement with Manhart on June 30, 1980, though neither of the copies in the record is signed or executed by either party. This agreement provides in part:

> "Whereas, the Estate does not admit the enforceability or legal validity of the aforesaid purported agreements [Manhart's prior agreements with Florian Bajonski], but is nevertheless willing to establish a viable contractual relationship with Manhart."

The agreement also provided Manhart with the exclusive right to authenticate and sell the painting, similar in most respects to the prior agreements, at 20% commission. The duration of the agreement was two years ending July 1, 1982. The agreement further secured Manhart's right to his commission, under stated circumstances, if the painting was sold or donated after termination of the agreement.

On May 11, 1982, the administrator petitioned the circuit court for permission to allow Manhart to exhibit the painting at the World's Fair in Tennessee. The order granted Manhart permission to exhibit the painting and, during the exhibition of the painting, the agreement between the administrator and Manhart was extended through October 31, 1982, to coincide with the conclusion of the fair.

On March 28, 1983, Manhart filed his petition to complete contract of decedent; in it he outlined the sums expended as a result of the contract, alleged that the value of the painting had increased substantially and that the administrator had refused to acknowledge the validity of the agreement and had interfered with Manhart's exclusive rights acquired under the agreements.

The administrator filed a motion to dismiss Manhart's petition, though it is not clear from the face of the pleading whether it was filed as a "Motion with respect to pleadings" (Ill. Rev. Stat. 1983, ch. 110, par. 2—615) or as an "Involuntary dismissal based upon certain defects or defenses" (Ill. Rev. Stat. 1983, ch. 110, par. 2—619). The administrator sought a dismissal because the alleged contract between Manhart and the decedent was personal in nature and, hence, performance was impossible; the agreement between Manhart and the administrator was a novation; and that Manhart's petition represented a claim against the estate filed after the six-month statutory time period. Elizabeth Harper, one of the heirs to the estate, also filed a motion to dismiss, pursuant to section 2—619, raising the same points as the administrator's motion, as well as arguing that Manhart's exclusive right acquired under the extension clause terminated upon the sale of the painting, an event which may never occur. The compulsory performance of the contract required of the adminis-

trator could thus prevent the estate from ever being closed, allegedly in derogation of the "precatory" language of section 19—10 of the Probate Act of 1975 (Ill. Rev. Stat. 1983, ch. 110½, par. 19—10), whereby contracts of a decedent can be ordered performed by the representative.

At the hearing on the motions on November 1, 1983, the court dismissed with prejudice Manhart's petition to complete the contract because the language of the agreement, *viz,* "subject to my acceptance," called for personal performance by the decedent and, consequently, the contract terminated upon his death. An order was entered that day dismissing the petition, and Manhart appeals therefrom.

■ The issue presented for review is whether the trial court erred in dismissing with prejudice Manhart's petition. Initially though, an examination is warranted regarding the form of the motions to dismiss and the manner in which the motions were entertained in the court below. The administrator's motion is not labeled, whereas Elizabeth Harper's motion is labeled as a section 2—619 motion. The trial court treated the motions as motions to strike and dismiss for failure to state a cause of action, indicative of a section 2—615 motion. An analysis of the petition and the motions to dismiss, however, discloses that the proper label for both motions is section 2—619 and that the motions should have been so treated by the court below. Under these facts, however, this error does not impugn the integrity of the trial court's decision.

■ ■ The trial court dismissed the petition because the contract required personal performance by the decedent and therefore terminated upon his death, an allegation included in both motions to dismiss. Under section 2—619(a)(9), an action may be dismissed if the claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." (Ill. Rev. Stat. 1983, ch. 110, par. 2—619(a)(9).) An affirmative matter within the meaning of that section is " ' "something in the nature of a defense that negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." ' " (*Bertling v. Roadway Express, Inc.* (1984), 121 Ill. App. 3d 60, 63, 459 N.E.2d 265, quoting *Austin View Civic Association v. City of Palos Heights* (1980), 85 Ill. App. 3d 89, 96, 405 N.E.2d 1256.) Discharge of one's contractual obligations because of death is "in the nature of a defense" that negates the alleged cause of action when the person who died was the one required to render the personal performance. The

law in this State is settled that contracts requiring the continued existence of a particular person or thing terminate upon the death or destruction of that person or thing. (*People ex rel. Palmer v. Peoria Life Insurance Co.* (1941), 376 Ill. 517, 521, 34 N.E.2d 829; *Martin Emerich Outfitting Co. v. Siegel, Cooper & Co.* (1908), 237 Ill. 610, 615-16, 86 N.E. 1104.) Thus, in the case of a personal service contract, as the trial court here found, the contract terminates upon the death of the party required to render the services. (*C. L. Smith v. Preston* (1897), 170 Ill. 179, 184-85, 48 N.E. 688.) Consequently, even though this matter was not treated as a section 2—619 matter below, it is properly reviewed by the appellate court as such. See *Hudson v. Mandabach* (1959), 22 Ill. App. 2d 296, 160 N.E.2d 715.

■ Manhart argues that the present motions must be treated under section 2—615 because no supporting affidavits were filed with either motion to dismiss. Pursuant to section 2—619(a), however, affidavits are only required when the grounds for dismissal do not appear on the face of the pleading being attacked. (*Premier Electrical Construction Co. v. La Salle National Bank* (1983), 115 Ill. App. 3d 638, 643, 450 N.E.2d 1360.) The allegation of a personal service contract in this case is premised on the allegations of Manhart's petition, including, and most importantly, the language of the contract attached to Manhart's petition. Therefore, no affidavits were required.

■ It only remains to determine whether the trial court was correct in holding that this contract required the personal service of the decedent. When reviewing the propriety of a dismissal, the appellate court is concerned only with questions of law. (*Circle Security Agency, Inc. v. Ross* (1981), 99 Ill. App. 3d 1111, 1114, 425 N.E.2d 1283.) The trial court here construed the contract as being personal in nature as to the decedent. The cases are legion holding that the construction of a contract, that is, the determination of the legal effect of the contract, is purely a question of law when the contract is unambiguous. (See, *e.g., United Farm Bureau Mutual Insurance Co. v. Elder* (1980), 89 Ill. App. 3d 918, 921, 412 N.E.2d 630.) Similarly, whether a contract is ambiguous, thereby capable of being understood in more than one sense, is also purely a question of law. (*Lenzi v. Morkin* (1983), 116 Ill. App. 3d 1014, 1015-16, 452 N.E.2d 667.) A thorough review of the contract in question and the relevant case law indicates that the contract was not ambiguous and that the trial court's determination was correct.

■■ The trial court found the contract to be personal as to the decedent because of the language "subject to my [the decedent's] acceptance." The general rule is that a contract survives the death of a

party (*Smith v. Wilmington Coal Mining & Manufacturing Co.* (1876), 83 Ill. 498, 500) except, as stated above, when the contract requires the continued existence of a particular person or thing for its performance. In those cases, there is always an implied condition that the death or destruction of that person or thing excuses further performance. (*Vogel v. Melish* (1964), 31 Ill. 2d 620, 624, 203 N.E.2d 411.) The contract in the present case is clearly one of a personal nature as to the decedent.

■ The language "subject to" generally indicates that a party's promise is not to be performed unless a condition occurs. (17 Am. Jur. 2d *Contracts* sec. 320, at 749 (1964).) The trial court's construction of that language as a matter of law, in conjunction with "my [the decedent's] acceptance," as creating a personal service contract was not improper. In *Interway, Inc. v. Alagna* (1980), 85 Ill. App. 3d 1094, 407 N.E.2d 615, the trial court had determined as a matter of law, pursuant to a section 45 motion to dismiss (now section 2—615), that the language "Our purchase is subject to a definitive Purchase and Sale contract to be executed by the parties" was unambiguous and that a formal, written agreement was a condition precedent to the existence of a binding contract. (85 Ill. App. 3d 1094, 1100.) While there are factual differences between *Alagna* and the present action, the reasoning of that case is instructive. *Alagna* countenances the construction of similar contractual language, as a matter of law, without requiring the introduction of extrinsic facts or evidence to determine the intent of the parties. The language here, "subject to my [the decedent's] acceptance," is as clear and unambiguous as the language in *Alagna*. The intent of the parties, determined from the face of the writing, contemplated a sale that had to be accepted by the decedent; his continued existence, therefore, was an implied condition such that when he died, his performance was excused. The anticipated performance in this case required the special qualities and characteristics brought by the decedent to the agreement, namely, his personal satisfaction as to any proposed sale. Since the acceptance required the decedent's personal taste, skill and judgment, the trial court was correct in dismissing the petition because the personal representative was not at liberty to undertake the execution of such an agreement.

■ Manhart urged below and here that the terms of the same being "acceptable" to the decedent is a condition able to be satisfied on a reasonable and objective basis—an action easily performed by the administrator. Manhart's argument, however, fails to evaluate the word "acceptance" in its full and proper context. This agreement clearly contemplates the satisfaction of the decedent, not any other

person. Manhart's position would be well taken in a case involving an ordinary job relating to mechanical work, construction or building according to some sort of architectural plan. (See *Erikson v. Ward* (1914), 266 Ill. 259, 264-65, 107 N.E. 593.) However, where the subject of the contract involves personal taste, judgment or other characteristics vested exclusively in one party, an agreement conditioning acceptance on that person's satisfaction, as here, necessarily makes that person the sole judge as to satisfaction and, consequently, the sole person able to accept performance. In such cases, the question as to the reasonableness of performance according to an objective standard never arises. A person entering into such an agreement cannot later be heard to argue its unreasonableness or the inherent unfairness involved. *Wolff v. Smith* (1940), 303 Ill. App. 413, 421, 25 N.E.2d 399.

Manhart further argues that he was denied due process of law by the trial court's alleged consideration of extra-record material improperly before the court when ruling on the motions to dismiss. A thorough review of the pleadings and record indicates that Manhart's argument is without merit.

For the above reasons, we find that the dismissal of the petition was proper. The decision of the lower court is therefore affirmed.

Affirmed.

DOWNING and PERLIN, JJ., concur.