**BILDOC, INC., Plaintiff,**

v.

**CHICAGO HOUSING AUTHORITY, a Municipal Corporation, Defendant.**

**No. 87 C 3494.**

United States District Court,
N.D. Illinois, E.D.

Feb. 9, 1989.

---

318

Stephen A. Gorman and John J. Foran, Foran, Wiss & Schultz, Chicago, Ill., for plaintiff.

Anthony J. Fusco, Jr., Chicago Housing Authority, Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is defendant's, Chicago Housing Authority ("CHA"), motion for summary judgment on plaintiff's, Bildoc, Inc. ("Bildoc") complaint. For the following reasons, the motion is granted.

Rule 56(c) of the Federal Rules of Civil Procedure provides that a summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff

cannot rest on mere allegations of a claim without any significant probative evidence which supports his complaint. *Id.; see First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims and defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the nonmoving party is required to go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.*

## FACTS

Bildoc filed this diversity action against the CHA alleging breach of contract. While the parties disagree on many collateral issues, there is no genuine issue as to any of the facts material to the question of whether the contract * under which Bildoc sues was lawfully terminated by the CHA.

On November 2, 1984, the CHA issued an Invitation to Bid on four projects for the replacement of floor tile in the apartments comprising the Robert Taylor Homes housing development. When the CHA accepted a bid, the Invitation to Bid would, along with certain other documents ("Contract Documents"), form the contract. Accompanying the Invitation to Bid were certain Contract Documents, including, among others, the Special Conditions, Instructions to Bidders and General Conditions.

The Contract Documents repeatedly informed all prospective bidders of the requirement of posting a payment and performance bond ("Performance Bond"), (Special Conditions ¶ 2), and more importantly that the Performance Bond be furnished to the CHA within ten days after the Contract Documents are provided for signature. (Instructions to Bidders ¶ 10(a)(b)). This was punctuated by the warning that

> The failure of the successful bidder to execute such contract and to supply the

required bonds withing ten days after the prescribed forms [the Contract Documents] are presented for signature, or within such extended period as the [CHA] may grant based upon reasons determined adequate by the [CHA], shall constitute a default, and the [CHA] may either award the contract to the next responsible bidder or readvertise the contract. . . .

(Instructions to Bidders ¶ 10(d)).

Bildoc was an Ohio Corporation experienced in contracting with public housing authorities. (Williams Dep. at 8–10). On November 6, 1984, Bildoc, through its president, Bill Williams, responded to the Invitation to Bid on an accompanying bid form with offers and proposals to do the work specified in each of the four projects. As required by the Special Conditions, Williams submitted a bid bond with each bid. (Special Conditions ¶ 1).

On November 29, 1984, CHA representatives opened all offers and proposals submitted in response to the Invitation to Bid and determined that Bildoc was the lowest responsible bidder on three of the four projects. The total contract price for these three projects was $3,866,611.17. During the relevant period, Zirl Smith was the Executive Director of the CHA and its authorized contracting officer. However, as Smith only had unilateral authority to contract for the CHA in non-emergency contracts with a contract price of up to $10,000.00, acceptance of the bid offers first required a CHA board resolution before Smith could accept on behalf of the CHA. (Resolution No. 80–CHA–44).

For unknown reasons, the CHA board did not pass a resolution accepting Bildoc's bids until more than six months had passed. During the intervening time, the CHA and Bildoc engaged in discussions regarding compliance with the Contract Documents. On June 17, 1985, Smith formally accepted the bids by executing the Award and Notice to Proceed on the bid form. Bildoc was informed of the CHA's

---

* For purposes of convenience the court will use the term "contract," as employed by the parties, even though as a matter of law no contract existed.

conditional acceptance in a certified letter dated June 21, 1985 ("Conditional Acceptance Letter") from Michael N. Gorman, Acting Purchasing Agent, which enclosed the Award and Notice to Proceed and the Contract Documents. The Conditional Acceptance Letter, which was sent to and received by Bildoc at 2387 Commerce Park, Beachwood, Ohio, also provided that the CHA's acceptance was subject to Bildoc furnishing the CHA with executed Contract Documents and posting a Performance Bond within 10 days.

Sometime after receiving notice of the CHA's conditional acceptance, Williams set about obtaining a Performance Bond. However, the bonding company normally used by Bildoc had recently filed for bankruptcy and Williams was unable to obtain an acceptable Performance Bond before the expiration of the ten day period set forth in the Contract Documents and the Conditional Acceptance Letter. Despite Bildoc's failure to timely post a Performance Bond, the CHA forbore from exercising its remedies of rebidding or awarding the contract to the next lowest bidder.

Williams asserts that Smith and Gorman, in a meeting held sometime in July, 1985, orally granted Bildoc an "extension," of the time in which it was required to post a Performance Bond. Though he cannot recall the duration or any of the terms of this "extension," Williams speculates that it was granted in light of the CHA's delay in formally accepting Bildoc's bid. (Williams Dep. at 35–40). On the other hand, Smith asserts that he did not converse with Williams until sometime in November of 1985. (Smith Dep. at 7). This dispute is not over a material fact and the court will assume, for the purposes of this motion, that, despite Bildoc's failure to comply with the Award and Notice to Proceed and numerous Contract Documents, the CHA, as it was entitled to, (Instructions to Bidders ¶ 10(d)), unilaterally forbore from exercising its express remedies and declaring Bildoc in default, thereby giving Bildoc additional time to procure a Performance Bond.

From July, 1985, until the last week in October, 1985, Williams was unable to obtain a Performance Bond. During that period, Williams inquired whether an individual surety bond was an acceptable alternative to a Performance Bond, with the CHA aiding Williams in making inquiries to the Department of Housing and Urban Development ("HUD") on this matter. On August 22, 1985, representatives of Bildoc and the CHA met for a preconstruction conference.

Finally, contemporaneously with the termination of numerous other contracts (Smith Dep. at 23–24), the CHA, by certified correspondence dated October 25, 1985, ("Termination Letter"), notified Bildoc that if a Performance Bond was not received by November 18, 1985, Bildoc would be in default as of that date. The Termination Letter was addressed to Bildoc at 2387 Commerce Park, Beachwood, Ohio. The certified mail return receipt, signed by G. DeNunzio, a part-time secretary at Bildoc (Williams Dep. at 95–97), indicates that the Termination Letter was received by Bildoc on November 13, 1985. Bildoc did not provide a Performance Bond or any bond to the CHA on or before November 18, 1985. (Williams Dep. at 90–91). Subsequent to November 18, 1985, the CHA Board of Directors never passed a resolution reinstating, reactifying or reviving the "contract" with Bildoc.

### DISCUSSION

██ It is aximotic that in order to prevail in this contract action, Bildoc must first prove the existence of a valid contract. *See Latex Glove Co., Inc. v. Gruen*, 146 Ill.App.3d 868, 873, 100 Ill.Dec. 488, 491, 497 N.E.2d 466, 469 (1st Dist.1986). Where there is no factual dispute the question of whether a contract exists is a matter of law. *Malcak v. Westchester Park District*, 754 F.2d 239, 243 (7th Cir.1985). Bildoc's statement of genuine issues of material fact recites only undisputed issues or disputes over immaterial facts.

*Posting a payment and performance bond was a condition precedent to the contract*

██ It is undisputed that Bildoc was required by the terms of the contract to

obtain a Performance Bond, (Invitation to Bid, Award and Notice to Proceed, Special Conditions ¶ 2, Instructions to Bidders ¶ 10(a)(b), Conditional Acceptance Letter), a requirement mandated by state law. Ill. Rev.Stat. ch. 29, ¶ 15, ch. 67½, ¶ 8.15 (1987); *see also, Western Waterproofing Co., Inc. v. Springfield Housing Authority,* 669 F.Supp. 901, 903–04 (C.D.Ill.1987). As the CHA's acceptance of Bildoc's bid offer was "subject to" Bildoc's posting of a Performance Bond, (Award and Notice to Proceed, Conditional Acceptance Letter), the posting of such a bond was a necessary condition to the existence of a contract between the CHA and Bildoc. *See Estate of Bajonski,* 129 Ill.App.3d 361, 367, 84 Ill.Dec. 672, 676–77, 472 N.E.2d 809, 813–14 (1st Dist. 1984); *see also,* E. Farnsworth, *Contracts* § 8.2 at 541–43 (1982).

█ Even had posting a Performance Bond not been a contractual condition, since the CHA could not have contracted absent the bond provision required under state law, Bildoc's failure to perform the obligation was a material breach, *see Anderson v. Long Grove Country Club Estate,* 111 Ill.App.2d 127, 139, 249 N.E.2d 343, 349 (2d Dist.1969), which justified termination of the contract by the CHA.

Bildoc asserts that because "[t]he ability of a bidder to obtain a performance bond shall not be regarded as the sole test of such bidder's competency or responsibility," (Instructions to Bidders ¶ 9(b)), the failure to obtain a Performance Bond is not a material breach. The court rejects Bildoc's interpretation of ¶ 9(b) of the Instructions to Bidders. This contractual provision cannot negate the unambiguous requirement of a Performance Bond contained in numerous of the Contract Documents, the Conditional Acceptance Letter and state law. Rather ¶ 9(b) of the Instructions to Bidders allows the CHA to find that, for any number of reasons, a bidder who can obtain a bond is nevertheless not "responsible."

█ That the CHA chose not to declare Bildoc in default immediately upon the expiration of the ten day period did not preclude it from doing so at a later date. As the contracting officer with the responsibility to administer contracts, Smith had the authority to grant an extension instead. However, Williams testimony is that he was given an extension of an indefinite length. There is no testimony that the CHA terminated the contract before the end of the term of an extension supported by consideration. Smith simply did Bildoc a "favor," because Bildoc was a minority contractor and because apparently it was his practice to grant additional time for contractors to comply with the Contract Documents. (Smith Dep. at 16). The CHA's forebearance from exercising its express remedies did not waive those remedies. That the CHA continued discussions with Bildoc and held a preconstruction conference is evidence that Bildoc was given an extension in which to satisfy a condition to the contract, not that the CHA considered a contract to exist. In the face of clear contractual and statutory requirements, no reasonable jury could find otherwise.

Similarly, the court rejects Bildoc's conclusion that one of Smith's responsibilities was "assuring that the contractor Bildoc obtained an acceptable performance bond." It was Bildoc's responsibility to post the bond. It was Smith's responsibility to perform under the terms of the contract on behalf of the CHA, i.e., exercise discretion in granting Bildoc an extension of time to post a Performance Bond and declare Bildoc in default when it failed to do so.

### The CHA terminated the Contract as of November 18, 1985

Bildoc asserts both that the Termination Letter was mistakenly sent and that is is not operative. There is no basis for Bildoc's assertions.

█ There is no genuine dispute over the material fact that the Termination Letter was received by Bildoc on November 13, 1985 and that notice was effective on that date. *Cf.* Ill.Rev.Stat. ch. 26, ¶ 1–201(26), (27) (1987). The certified mail return receipt was signed by an individual whom Williams admits was a part-time employee

of Bildoc. Previous correspondence from the CHA addressed to Bildoc at that address was received. Williams' self-serving allegation that he never actually saw the original Termination Letter is insufficient for a reasonable jury to conclude otherwise.

■ Bildoc also wants this court to infer that because Smith testified that termination letters were not authorized to go out without his signature and the copy of the Termination Letter of record is unsigned, that the Termination Letter was mailed by mistake. This is not a reasonable inference based on the undisputed facts. Smith testified that in October of 1985, he instructed his staff to send termination letters to all contractors who had not proceeded on their contracts or obtained bonding. (Smith Dep. at 12, 23–24). That Smith cannot remember signing every letter and that the CHA's office copy of the Termination Letter is unsigned are not remarkable. Even if the original Termination Letter was unsigned, the court would find that it provided effective notice. *Cf.* Fed.R.Civ.P. 5 (no requirement that pleadings or other papers be signed to be effective notice). In any event, the certified mail return receipt indicates that the original was delivered to Bildoc. Finally, that Williams, as he asserts, never actually read the Termination Letter does not vitiate its effectiveness.

■ Bildoc's failure to satisfy a condition to the contract, posting a Performance Bond, coupled with the CHA declaring Bildoc in default via the Termination Letter effectively terminated the contract. *See Local 165 v. Bradley,* 149 Ill.App.3d 193, 205, 102 Ill.Dec. 20, 28, 499 N.E.2d 577, 585 (1st Dist.1986) (if condition precedent unsatisfied contractual obligations end).

*The post termination actions of CHA representatives could not revive the contract or create a new contract*

■ Williams states that he "was always informed from day one that [he] had a contract" and that he "was informed that [he] had a contract not only by Mr. Smith but by Mr. Gorman as well." (Williams Dep. at 110). He asserts that the activities of CHA representatives subsequent to November 1985—continued discussions with Williams and HUD concerning posting an acceptable bond and review of an individual surety bond—were consistent with the existence of a contract. The court disagrees. In the face of the overwhelming evidence of termination—the Termination Letter—no reasonable jury could find that the CHA's actions after November 18, 1985 demonstrated that a contract existed. Rather, the CHA's post-November 18, 1985 actions were consistent with Smith's professed willingness to resubmit the terminated contract for CHA board approval once Bildoc posted an acceptable Performance Bond. (Smith Dep. at 26).

Even if Smith, Gorman or any other CHA respresentative had purported to bind the CHA contractually subsequent to the November 18, 1985 termination, it would not be effective. It was a matter of public record that only the CHA Board, by resolution, could bind the CHA in nonemergency contracts exceeding $10,000.00. (Resolution No. 80–CHA–44). Bildoc is presumed to have notice of this limitation on the CHA's contracting procedures. *D.C. Consulting Engineers, Inc. v. Batavia Park District,* 143 Ill.App.3d 60, 63, 97 Ill.Dec. 341, 343, 492 N.E.2d 1000, 1002 (2d Dist. 1986); *City of Chicago v. Nielsen,* 38 Ill. App.3d 941, 948–49, 349 N.E.2d 532, 540–41 (1st Dist.1976); *M.A.T.H., Inc. v. Housing Authority of East St. Louis,* 34 Ill.App.3d 884, 887, 341 N.E.2d 51, 53 (5th Dist.1976); *Wacker–Wabash Corp. v. City of Chicago,* 350 Ill.App. 343, 354, 112 N.E.2d 903, 908 (3d Dist.1953). Moreover, Williams, being experienced in dealing with public housing authorities, presumably had actual knowledge of limitations on the manner in which a housing authority may contract. *Nielsen,* 38 Ill.App.3d at 348–49, 349 N.E.2d at 540–541. Once the contact was terminated on November 18, 1985, only resubmission to the CHA Board for approval could have revived the contract. *See, e.g., South Suburban Safeway Lines, Inc. v. Regional Transportation Authority,* 166 Ill.App.3d 361, 366–67, 116 Ill.Dec. 790, 794–95, 519 N.E.2d 1005, 1009–10 (1st Dist.1988) (letter

agreement invalid absent required approval of majority of RTA directors); *D.C. Consulting Engineers*, 143 Ill.App.3d at 63, 97 Ill.Dec. at 343, 492 N.E.2d at 1002 (contract void where municipal representative purports to bind municipality in violation of applicable statute); *M.A.T.H.*, 34 Ill.App.3d at 887, 341 N.E.2d at 53–54. (chairman of housing authority lacked authority to renegotiate terms of contract). It is undisputed that this never occurred.

Though not specifically so pleading Bildoc implies that the CHA is subject to waiver or estoppel. On the facts before it, the court as a matter of law, *Bennett & Kahnweiler Assocs. v. Ratner*, 133 Ill. App.3d 316, 321–22, 88 Ill.Dec. 530, 534, 478 N.E.2d 1138, 1142 (1st Dist.1985), concludes that the CHA neither waived its rights by acting inconsistent with them nor accepted benefits from Bildoc's performance notwithstanding Bildoc's noncompliance. *Chicago Col. of Ost. Med. v. George A. Fuller Co.*, 719 F.2d 1335, 1343 (7th Cir.1984). The court further concludes that Bildoc has not demonstrated the special circumstances necessary to estop a municipal corporation. *See Chicago Food Management, Inc. v. City of Chicago*, 163 Ill.App.3d 638, 645–46, 114 Ill.Dec. 725, 730, 516 N.E.2d 880, 885 (1st Dist.1987); *M.A.T.H.*, 34 Ill.App.3d at 887–88, 341 N.E.2d at 54.

When all the smoke clears, Bildoc simply was unable to timely satisfy a contractual condition required by state law within the extension provided by the CHA, an accomodation, in light of their status as a defendant before the court, the CHA may well wish it had not granted. As no reasonable jury could find that a contract existed between Bildoc and the CHA, the CHA's motion for summary judgment is granted.

IT IS SO ORDERED.